UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Marcel Koszkul,<br><br>              Plaintiff,<br><br>      v<br><br>Michelle Carney,<br><br>              Defendant | 24-cv-06480-EAW<br><br>Hon. Mark W. Pedersen |
| Michelle Carney,<br><br>             Third Party Plaintiff,<br><br>      v<br><br>Rochester Institute of Technology,<br><br>            Third Party Defendant. | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT/THIRD PARTY PLAINTIFF'S OPPOSITION TO THIRD PARTY DEFENDANT'S MOTION TO DISMISS**<br><br>**SUR-REPLY REQUESTED** |

## **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT/THIRD PARTY PLAINTIFF'S OPPOSITION TO THIRD PARTY DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................................................ III

**PRELIMINARY STATEMENT** ................................................................................... 6

**LEGAL ARGUMENT** ................................................................................................. 6

**I.    THE DOCTRINE OF RES JUDICATA IS INAPPLICABLE TO CARNEY'S THIRD-PARTY CLAIMS** ............................................................................ 2

    *A.    Res Judicata Requires a Final Adjudication on the Merits.* ......................... 3

    *B.    The Article 78 Proceeding Could Not Issue the Relief Sought in This Case.* ............... 3

**II.    THE PRIOR ARTICLE 78 DETERMINATION DOES NOT PRECLUDE CARNEY'S CLAIMS UNDER THE DOCTRINE OF COLLATERAL ESTOPPEL** ....... 6

    *A.    There is No Identity of Issues Decided on the Merits.* .................................... 6

**III.   CARNEY HAS ADEQUATELY PLED BREACH OF CONTRACT** ..................... 8

    *A.    Ms. Carney Has Adequately Alleged the Existence of a Contract and its Terms.* ........... 8

       *i.    Ms. Carney has adequately alleged the existence of a contract.* ................................ 8

       *ii.   Ms. Carney has adequately identified specific policy provisions as terms of the contract.* ............. 9

    *B.    Ms. Carney Has Alleged RIT Breached Specific Contractual Obligations.* ................. 11

    *C.    RIT's "Substantial Compliance" Argument Is Inappropriate at this Stage.* ................. 12

    *D.    Ms. Carney Has Sufficiently Alleged Damages.* ......................................... 14

**IV.   CARNEY HAS ADEQUATELY PLED BREACH FOR NEGLIGENCE** ................. 15

    *A.    Carney's Negligence Claim is Not Duplicative of Her Breach of Contract Claim.* ...... 15

    *B.    RIT Breached Their Legal Duties.* .......................................................... 19

    *C.    RIT Proximately Caused Carney's Injuries and Damages.* .......................... 21

**V.    CARNEY HAS SUFFICIENTLY PLED A CLAIM FOR INDEMNIFICATION** .... 23

**VI.   CARNEY HAS SUFFICIENTLY PLEAD A CLAIM FOR CONTRIBUTION** ....... 25

    *A.    New York Law Permits Contribution Claims Against Third Parties for Intentional Torts.* ............ 26

    *B.    Carney Properly Alleges RIT as Joint Tortfeasors* ...................................... 27

    *C.    RIT and Ms. Carney are joint tortfeasors.* .......................***Error! Bookmark not defined.***

**CONCLUSION** ........................................................................................................... 29

## TABLE OF AUTHORITIES

**Cases**

*AA v. Hammondsport Cent. Sch. Dist.*, 527 F. Supp. 3d 501 (W.D.N.Y. 2021) .......................... 2

*Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012) ............................. 3, 28

*Anderson v. Strong Mem. Hosp.*, 151 Misc. 2d 353 (Sup. Ct. Monroe Cnty. 1991) .................. 28

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................ 2

*Avis Budget Car Rental, LLC v. JD2 Envtl., Inc.*, 2016 U.S. Dist. LEXIS 40064 (EDNY 2016) 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................... 2

*Bergeron v Rochester Inst. of Tech.*, 2020 US Dist LEXIS 241125 (W.D.N.Y. Dec. 18, 2020, No.
   20-CV-6283 (CJS)) ...................................................................................................... 13

*Biro v. Condé Nast*, 883 F. Supp. 2d 441 (S.D.N.Y. 2012) ................................................... 27

*Buechel v. Bain*, 97 N.Y.2d 295, (2001) .............................................................................. 3

*Burgos v. Hopkins*,14 F.3d 787, 790 (2d Cir. 1994) ............................................................. 4

*Childers v. NY & Presbyt. Hosp.*, 36 F. Supp. 3d 292, 311 (S.D.N.Y. 2014) .......................... 22

Cianci v. New Times Publ'g Co., 639 F.2d 54 (2d Cir. 1980) ................................................ 27

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382 (NY 1987) ............................. 15

*D'Ambrosio v. City of New York*, 55 N.Y.2d 454, 461 (NY 1982) .......................................... 24

*Davis v. Boeheim*, 24 N.Y.3d 262 (2014) ............................................................................ 27

*Doe v Quinnipiac Univ.*, 404 F Supp 3d 643 (D Conn 2019) ............................................... 13

*Doe v. Columbia*, 551 F Supp.3d 433 (S.D.N.Y. 2021) ...................................................... 4, 5

*Doe v. Hobart & William Smith Colleges*, No. 6:23-cv-06079, 2024 WL 1026371 (W.D.N.Y.
   Mar. 8, 2024).......................................................................................................... 10, 11

*Doe v. Ithaca Coll.*, 2024 U.S. Dist. LEXIS 162936 (N.D.N.Y. 2024).......................... 16, 18, 19

*Doe v. Jesuit*, 2024 U.S. Dist. LEXIS 216335 (W.D.N.Y. 2024)........................................... 15

*Doe v. Princeton Univ.*, 30 F.4th 335 (3d Cir. 2022) .......................................................... 11

*Doe v. Rochester Inst. of Tech.*, 2024 U.S. Dist. LEXIS 42245, at *18 (W.D.N.Y. 2024) .......... 10

*Doe v. Syracuse Univ.*, 2022 U.S. Dist. 47053 (N.D.N.Y. 2022)........................................... 17

*Doe v. Syracuse Univ.*, 2022 US Dist LEXIS 47053 (N.D.N.Y. Mar. 16, 2022, No. 5:18-cv-1100
   (BKS/TWD).............................................................................................................. 14

*Doe v. Syracuse Univ.*, 341 F. Supp. 3d 125 (N.D.N.Y. 2018) ............................................... 9

*Doe v. Syracuse Univ.*, 440 F. Supp. 3d 158 (N.D.N.Y. 2020) ............................................. 11

*Doe v. Univ. of St. Thomas*, 368 F. Supp. 3d 1309 (Minn. Dist. Ct. 2019) ............................. 16

*Doyle v. AG Letitia James*, 733 F. Supp. 3d 191 (W.D.N.Y. 2024)........................................ 28

*Faber v. Metro. Life Ins. Co.*, 648 F.3d 98 (2d Cir. 2011) ..................................................... 2

*Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198 (E.D.N.Y. 2004)............................ 24

*Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336 (N.D.N.Y. 2014)........................................... 15, 19

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 US 274 (1998) ................................................. 16

*Gilmore v. Family Dollar*, 2024 U.S. Dist. LEXIS 111823, at *4 (W.D.N.Y. 2024) ................. 23

*Goldberg v. Pace Univ.*, 88 F.4th 204 (2d Cir. 2023)............................................................ 9

*Gumowitz ex rel. W. 79th St. Assoc. v. First Fed. Sav. & Loan Assn.*, 1994 U.S. Dist. LEXIS
   9160 at *2-3 (S.D.N.Y. 1994)........................................................................................ 26

*Hanrahan v. Riverhead Nursing Home*, 592 F.3d 367 (2d Cir. 2010) ...................................... 3

*Harriram v. Fera*, No. 22-CV-3356 (RA), 2023 U.S. Dist. LEXIS 114687 (S.D.N.Y. June 30,
   2023) .......................................................................................................................... 5

*Harris v. Seward Park Housing Corp.,* 79 N.Y.2d 434 (NY 1992) ........................................... 8

*Heath v. EcoHealth All.*, 2024 U.S. Dist. LEXIS 231002 (S.D.N.Y. 2024)............................... 19

*In re Am. Exp. Co. S'holder Litig.*, 39 F.3d 395 (2d Cir. 1994) ............................................ 22

*Karamoko v. New York City Housing Authority*, 170 F. Supp. 2d 372 (S.D.N.Y. 2001).............. 5

*Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449 (1985)................................................................. 7

*Keefe v. N.Y. L. Sch.*, 71 A.D.3d 569, 897 N.Y.S.2d 94 (1st Dep't 2010)................................... 9

*Kloner v. United States*, 196 F. Supp. 3d 375 (EDNY 2016) ................................................. 16

*Koeller v. Numrich Gun Parts Corp.*, 675 F. Supp. 3d 260, 270 (N.D.N.Y. 2023) ..................... 21

*Kosakow v. New Rochelle Radiology Assoc., P.C.*, 274 F3d 706 (2d Cir 2001) ......................... 7

*Langley v. Coughlin*, 715 F. Supp. 522 (S.D.N.Y. 1989) ........................................................ 27

*Leather v. Ten Eyck*, 180 F.3d 420 (2d Cir. 1999)................................................................... 4

*Lightner v. Wenderlich*, 271 F. Supp. 3d 445 (W.D.N.Y. 2017)................................................ 2

*Lily Meng v. New Sch.,* 686 F. Supp. 3d 312 (S.D.N.Y. 2023)................................................ 14

*Massachusetts Mut. Life Ins. Co. v. Weinbach*, 635 F. Supp. 1460, 1462 (S.D.N.Y. 1986) ........ 26

*McCoy v. Goldberg,* 778 F. Supp. 201, 205 (S.D.N.Y. 1991).............................................. 26, 27

*McGinty v. Sullivan*, 2019 N.Y. Misc. LEXIS 35561 (Sup Ct, Queens County Dec. 17, 2019, No. 715792/18)................................................................................................................ 25

*McGuinn v. Smith*, 523 F. App'x 764 (2d Cir. 2013) .............................................................. 7

*Menaker v. Hofstra Univ.*, 935 F.3d 20 (2d Cir. 2019)......................................................... 11

*Morabito v. New York*, No. 6:17-cv-06853-MAT, 2018 U.S. Dist. LEXIS 101502 (W.D.N.Y. June 18, 2018)............................................................................................................. 8

*Nestor v. Pratt & Whitney*, 466 F.3d 65 (2d Cir. 2006).......................................................... 3

*New Windsor Volunteer Ambulance Corps v. Meyers*, 442 F.3d 101, 112 (2d Cir. 2006)............. 9

*Nielsen v. Rabin*, 746 F.3d 58 (2d Cir. 2014) ...................................................................... 2

*Niles v. Nelson*, 72 F. Supp. 2d 13 (N.D.N.Y. 1999)............................................................. 16

*Ornstein v. N.Y. City Health & Hosps. Corp.*, 10 N.Y.3d 1, 6, 881 N.E.2d 1187, 852 N.Y.S.2d 1 (2008)....................................................................................................................... 23

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81 (2d Cir. 2011)................ 8, 16

*Park Place Entertainment Corp. v Transcontinental Ins. Co.*, 225 F. Supp. 2d 406, 412 (S.D.N.Y. 2002)....................................................................................................... 25

*Prasad v. Cornell Univ.*, 2016 U.S. Dist. LEXIS 161297 (NDNY 2016)................................... 15

*Quartararo v. Catterson*, 917 F. Supp. 919 (E.D.N.Y. 1996) ................................................. 8

*Radwan v Manuel*, 55 F.4th 101 (2d Cir 2022) .................................................................. 13

*Raquet v Braun*, 90 NY2d 177 (1997)............................................................................... 26

*Regis-Dumeus v Great Lakes Kraut Co., LLC*, 462 F Supp 3d 292 (W.D.N.Y. 2020) ................. 8

*Roberts v. Los Alamos Nat'l Sec., LLC*, 278 F. Supp. 3d 651 (W.D.N.Y. 2017) .................. 15, 16

*Rolph v. Hobart & William Smith Colls.*, 271 F. Supp. 3d 386 (W.D.N.Y. 2017)...................... 15

*Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008)...................................................... 2

*Rynasko v NY Univ.*, 63 F.4th 186 (2d Cir 2023) .................................................................. 9

*Schachtler Stone Prods., LLC v. Town of Marshall*, 2024 U.S. Dist. LEXIS 158124, at *16–17 (N.D.N.Y. 2024) ....................................................................................................... 3

*Scheuer v. Rhodes*, 416 U.S. 232 (1974).............................................................................. 9

*Schwartz v. Public Adm'r*, 24 N.Y.2d 65, 73 (NY 1969) ........................................................ 7

*Silverman v. Meister Seelig & Fein, LLP (In re Agape World, Inc.)*, 467 B.R. 556, 578 (Bankr. E.D.N.Y. 2012) ...................................................................................................... 26

*Sokola v. Weinstein*, 187 N.Y.S.3d 493 (Sup. Ct. NY County 2023)..................................... 18, 25

*Thar Process, Inc. v. Sound Wellness, LLC*, 2023 U.S. Dist. LEXIS 400, at *16-17 (W.D.N.Y. 2023) ........................................................................................................................ 24

iv

*Van-Go Transp. Co. v. NYC Bd. of Educ.*, 971 F. Supp. 90 (E.D.N.Y. 1997) ............................ 27
*Vargas v. City of NY*, 377 F.3d 200 (2d Cir 2004) ........................................................ 7
*Vega v. State Univ. of N.Y. Bd. of Trs.*, 67 F. Supp. 2d 324 (S.D.N.Y. 1999).......................... 5, 8
*Wolongevicz v. Town of Manilus*, 2018 U.S. Dist. LEXIS 130274(N.D.N.Y. 2018).................. 27

**Statutes**

20 U.S.C. § 1232g ............................................................................................. 20
N.Y. Educ. L. Article 129-B ........................................................................... 17, 21
N.Y. Educ. L. Article 129-B § 6443 (6) ............................................................ 21
N.Y. Educ. L. Article 129-B § 6443 (7) ............................................................ 21
N.Y. Educ. L. Article 129-B, § 6444(5)(b)(iii)................................................. 18, 21

**Rules**

N.Y. C.P.L.R. Article 78 ...................................................................................passism

**Regulations**

34 C.F.R. § 106.45(b) ..................................................................................... 17, 20

## PRELIMINARY STATEMENT

Third-Party plaintiff Michelle Carney ("Carney" or "Ms. Carney") respectfully submits this Memorandum of Law in Opposition to third-party defendant Rochester Institute of Technology's ("RIT") Motion to Dismiss the Amended Third-Party Complaint ("ATPC"). RIT's motion, filed pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. Pro.") 12(b)(6), fails to demonstrate that plaintiff has not stated a legally cognizable claim. Ms. Carney sufficiently pled claims for indemnification, contribution, breach of contract, and negligence, each of which arises from RIT's flawed handling of its Title IX proceedings and its failure to uphold its obligations to plaintiff as a student.

RIT's motion rests on mischaracterizations of the allegations in plaintiff's Amended Third-Party Complaint and an incorrect application of legal principles governing motions to dismiss. At this procedural stage, all well-pleaded factual allegations in the complaint must be accepted as true and viewed in the light most favorable to plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under this standard, RIT's motion must be denied in its entirety.

## LEGAL ARGUMENT

The court evaluates a motion to dismiss under the Fed. R. Civ. P. 12(b)(6) by accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff. *See Lightner v. Wenderlich*, 271 F. Supp. 3d 445, 452 (W.D.N.Y. 2017); *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009) (quoting *Bell Atl. Corp. v Twombly*, 550

U.S. 544, 570 (2007)). *See also AA v. Hammondsport Cent. Sch. Dist.*, 527 F. Supp. 3d 501, 506 (W.D.N.Y. 2021) ("In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. Proc. 12(b)(6), a court should "draw all reasonable inferences in [plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.") (quoting *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570 (explaining that the factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."). *See also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("The plausibility standard is not akin to a probability requirement . . . [A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." (citations, alterations, and internal quotation marks omitted)). "[A] given set of actions may well be subject to diverging interpretations, each of which is plausible," and "[t]he choice between or among plausible inferences or scenarios is one for the factfinder." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012). In other words, a court may not properly dismiss a complaint that states a plausible version of the events merely because the court finds that a different version is more plausible." *Id.* at 185.

## I.    THE DOCTRINE OF RES JUDICATA IS INAPPLICABLE TO CARNEY'S THIRD-PARTY CLAIMS

"In considering the preclusive effect of a state court judgment on a [claim in a] subsequent federal action, [courts] usually consult the preclusion laws of the state in which the judgment was issued." *Hanrahan v. Riverhead Nursing Home*, 592 F.3d 367, 369 (2d Cir. 2010)

(quoting *Nestor v. Pratt & Whitney*, 466 F.3d 65, 71 (2d Cir. 2006)). The New York Court of Appeals has instructed that "doubts should be resolved against imposing preclusion to ensure that the party to be bound can be considered to have had a full and fair opportunity to litigate." *Buechel v. Bain*, 97 N.Y.2d 295, 305 (NY 2001).

A.  Res Judicata Requires a Final Adjudication on the Merits**.**

Res judicata bars re-litigation of claims that were, or could have been, raised in a prior proceeding between the same parties arising from the same transaction if the case was decided on the merits. *See Schachtler Stone Prods., LLC v. Town of Marshall*, 2024 U.S. Dist. LEXIS 158124, at *16–17 (N.D.N.Y. 2024) (explaining that under New York law, res judicata applies only where the prior action resulted in a final judgment on the merits, involved the same parties or their privies, and where the claims in the second action were or could have been raised in the first; mere procedural dismissals, including for lack of standing, do not satisfy these requirements). Because the prior N.Y. C.P.L.R. Article 78 proceeding was **not** adjudicated on the merits, but rather on Title IX standing grounds (see full discussion in, below), res judicata does not bar Ms. Carney's claims.

B.  The Article 78 Proceeding Could Not Issue the Relief Sought in This Case.

New York State follows the "transactional approach" to determining claim preclusion; meaning claims arising from the same "factual grouping" are considered part of a single cause of action. Consequently, a subsequent claim may be barred even if it relies on different legal theories or requests different or additional relief. *See Davidson v. Capuano*, 792 F.2d 275 (2d Cir. 1986); *see also Burgos v. Hopkins*,14 F.3d 787, 790 (2d Cir. 1994); *Whitfield v. City of N.Y.*, 96 F.4th 504, 523 (2d Cir. 2024).

However, one critical limit upon claim preclusion exists. As the Hon. Susan L. Carney recently explained in *Whitfield*, "claim preclusion will not apply if the initial forum did not have

the power to award the full measure of relief sought in the later litigation," clarifying that, "where formal barriers to asserting a claim existed in the first forum it would be unfair to preclude the plaintiff from a second action in which he can present those phases of the claim which he was disabled from presenting in the first." 96 F.4th at 523 (internal quotation and citations omitted); *see also Davidson,* 792 F.2d at 278; *Burgos,* 14 F.3d at 790; *Leather v. Ten Eyck*, 180 F.3d 420, 425 (2d Cir. 1999). In other words, as the Hon. Gregory Howard Woods III succinctly put, a plaintiff's claim should be precluded only if "Plaintiff pursued a claim arising from the same facts *in a proceeding that could have provided the same relief.*" *Doe v. Columbia*, 551 F Supp.3d 433, 461 (S.D.N.Y. 2021) (emphasis added).

In this case, the New York State Supreme Court lacked the authority to grant the relief Ms. Carney seeks in the present action. Ms. Carney's third-party complaint against RIT seeks compensatory and punitive damages, as well as attorney's fees for RIT's breach of contract, and negligence. *See* dkt. <u>69</u>, pg. 22 and ¶¶136-7. Because these damages were not available to Ms. Carney in her Article 78 proceeding—as defendants clearly acknowledged in their papers in response to the Art. 78—(*see* Levy Decl., ¶10 and Exhibit C, pg. 14) her claims are not precluded. *See Harriram v. Fera*, 2023 U.S. Dist. LEXIS 114687, at *11 (S.D.N.Y. 2023) ("where plaintiffs have sought additional compensatory or punitive damages in a subsequent action—[…]—courts have ruled that those claims are *not* precluded by a prior Article 78 proceeding."); *Davidson v. Capuano*, 792 F.2d at 278-79 (holding a prisoner's claim for civil rights damages was not barred by res judicata, even though the claim was based on the same facts as the prisoner's prior Article 78 proceeding, because damages were not available in the Article 78 proceeding); *Doe*, 551 F. Supp. 3d at 462-63 (finding that plaintiff Doe's claims for damages—other than those incidental to the injunctive relief he sought—were not precluded,

even though they arose out of the same facts as his Article 78 proceedings because such damages are unavailable in Article 78 proceedings). *See also Vega v. State Univ. of N.Y. Bd. of Trs.*, 67 F. Supp. 2d 324, 333-35 (S.D.N.Y. 1999); *Karamoko v. New York City Housing Authority*, 170 F. Supp. 2d 372, 375-78 (S.D.N.Y. 2001).

RIT's argument, "[w]here a Plaintiff/petitioner has claims they can only bring pursuant to an Article 78 action, they should bring any other claims relating to contract or tort in a hybrid Article 78 proceeding…" (*see* dkt. 77, pg. 33-4) has been flatly rejected by the Second Circuit in *Whitfield*. As Judge Carney clarified, judgment in a prior Article 78 proceeding can preclude future damages claims only if (1) the petitioner sought relief that could not be awarded in a pure Article 78 proceeding *and* (2) the state court took affirmative action demonstrating that it adjudicated the proceeding as a hybrid one. *Whitfield*, 96 F.4th at 526-27. In making those determinations, the default rule must be that a proceeding initiated by an Article 78 petition will be a "pure" Article 78 proceeding, absent clear indications otherwise. *Id.* at 528.

There should be no doubt Ms. Carney's proceeding was a "pure" Article 78 proceeding and there is no reason for this court to assume otherwise. Explaining why an Article 78 proceeding should never be presumed to be a hybrid proceeding (one in which the court converts the matter to a plenary action when a petitioner seeks relief beyond the scope of Article 78), Judge Carney stated,

> "[p]erhaps even more important, we observed that a New York court
> is not compelled by CPLR § 103(c) to sever and convert a claim into
> its proper form; the power is discretionary. Because a state court is
> not *required* to convert an Article 78 proceeding to a plenary action
> whenever the petitioner seeks relief beyond the scope of Article 78,
> we were unwilling to assume that Article 78 petitioners can, as a
> rule, obtain the full scope of relief available in a plenary action. In
> other words, we declined to adopt a claim preclusion rule that would
> presume    the    state    court's    exercise    of    a    discretionary

power." *Whitfield*, 96 F.4th at 524 (internal quotations and citation omitted).

Because New York law calls for doubts to be resolved against imposing claim preclusion (*see Buechel*, 97 N.Y.2d at 305), claim preclusion should apply only if it is clear that the state court treated the prior proceeding as one in which plenary relief was available. *See Whitfield*, 96 F.4th at 529. In this case, it is abundantly clear the state court did not. Thus, since Ms. Carney's earlier Article 78 proceeding necessarily provided only a limited remedy, she is not barred from bringing the instant claims in this Court.

## II.    THE PRIOR ARTICLE 78 DETERMINATION DOES NOT PRECLUDE CARNEY'S CLAIMS UNDER THE DOCTRINE OF COLLATERAL ESTOPPEL

RIT next argues Ms. Carney's third-party claims are precluded by the dismissal of her Article 78 petition. *See* dkt. 77, pgs. 30-3. This argument mischaracterizes both the scope of Article 78 preclusion and the nature of the prior court's ruling.

### A.    There is No Identity of Issues Decided on the Merits.

For collateral estoppel to apply, the Second Circuit has held that there must be an "identity of issue which has necessarily been decided in the prior action and is decisive of the present action," and the party to be estopped must have had a "full and fair opportunity to contest the decision now said to be controlling." *Kosakow v. New Rochelle Radiology Assoc., P.C.*, 274 F.3d 706, 730 (2d Cir. 2001) (quoting *Schwartz v. Public Adm'r*, 24 N.Y.2d 65, 73 (NY 1969)). The same court further held "…issue preclusion may bar consideration […] of an issue that was previously decided in Article 78 proceedings, provided that the plaintiff raised the issue, and the issue was "actually and necessarily" decided by the state court. *McGuinn v. Smith*, 523 F. App'x 764, 766 (2d Cir. 2013) (quoting *Vargas v. City of NY*, 377 F.3d 200, 205-06 (2d Cir 2004)). *See also Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455 (NY 1985) ("The point is significant

because collateral estoppel effect will only be given to matters 'actually litigated and determined' in a prior action."). None of the issues raised by Ms. Carney in her third-party complaint against RIT (e.g., whether RIT breached its contract, was negligent, or should be subject to indemnity and contribution) were "actually and necessarily" decided by in the Article 78 proceeding.

Opposing counsel's assertion that Judge Nasca dismissed Ms. Carney's Article 78 petition on the basis that she "was unable to establish injury in fact in support of any of her claims" (dkt. 77-1, pg. 34) is a gross mischaracterization of the court's decision. In reality, Judge Nasca found that Ms. Carney lacked standing specifically to challenge RIT's Title IX determination under Article 78—not that she failed to establish injury in fact with respect to any of the distinct legal claims she now asserts in this action. More specifically, Judge Nasca found the injuries alleged by Ms. Carney were speculative and fell outside of the zone of interests to be protected *by Title IX* "that being equal access to education." Levy Decl., Exhibit B. As a result, Judge Nasca found Ms. Carney lacked standing to bring her Article 78 claim. *See id.*. Dismissal on standing grounds does not resolve the substantive issues raised in the subsequent complaint and therefore cannot support issue preclusion. *See Regis-Dumeus v. Great Lakes Kraut Co., LLC*, 462 F. Supp. 3d 292, 299 (W.D.N.Y. 2020) (collecting cases).

If Ms. Carney's third party complaint against RIT included a Title IX claim, the issue of her standing to make such a claim could be precluded (*see Morabito v. New York*, 2018 U.S. Dist. LEXIS 101502, at *13-14 (W.D.N.Y. 2018)), but Ms. Carney's third party complaint does not make a claim pursuant Title IX. Instead, her complaint seeks damages for breach of contract, negligence, contribution, and indemnification. *See* dkt. 69. The New York Supreme Court's decision regarding Ms. Carney's standing to make a claim under Title IX is not essential to this

court's decision assessment of whether she properly brings these third-party complaint claims.

*See, e.g., Quartararo v. Catterson*, 917 F. Supp. 919, 944-45 (E.D.N.Y. 1996) (holding that

although issues may have been decided in Article 78 proceeding they were not essential to the

judgment and therefore collateral estoppel did not apply); *see also Vega*, 67 F. Supp. 2d at 339.

### III.    CARNEY HAS ADEQUATELY PLED BREACH OF CONTRACT

RIT's motion to dismiss Ms. Carney's breach of contract claim fundamentally

mischaracterizes both the legal standard applicable to such claims and the factual allegations set

forth in the ATPC. Under New York law, a breach of contract claim requires (1) the existence of

a contract; (2) plaintiff's performance; (3) defendant's breach; and (4) resulting damages. *See*

*Papelino v. Albany Coll. of Pharmacy*, 633 F.3d 81, 93 (2d Cir. 2011); *Harris v. Seward Park*

*Housing Corp.,* 79 N.Y.2d 434, 437 (NY 1992). Ms. Carney has sufficiently alleged the

existence of a binding contractual relationship, specific contractual provisions, RIT's failure to

comply with those terms, and resulting damages. Specifically, Carney has met this standard by

alleging that RIT's policies formed an implied contract, which RIT breached by failing to

provide a fair and impartial investigation as required under its own Title IX policies. In her

complaint, Carney specifically identified multiple and definite promises RIT made through its

policies and then violated, including procedural deficiencies in the investigation and hearing,

failure to provide required accommodations, and a biased adjudication process. *See Doe v.*

*Syracuse Univ.*, 341 F. Supp. 3d 125, 141 (N.D.N.Y. 2018) (holding that a university's failure to

follow its own disciplinary procedures may constitute a breach of contract).

A.    <u>Ms. Carney Has Adequately Alleged the Existence of a Contract and its Terms.</u>
      i.    *Ms. Carney has adequately alleged the existence of a contract.*

Student-university contracts are generally construed from university publications and

policies made available to students. *See Goldberg v. Pace Univ.*, 88 F.4th 204, 210 (2d Cir.

2023). The ATPC alleges that the contract between Ms. Carney and RIT arises from her matriculation at the university and RIT's accompanying, specific promises articulated in published policies, including the Title IX Policy. *See* dkt. 69-1. Courts have routinely recognized that such documents form the basis of implied contracts between students and their institutions. *See Rynasko v. NY Univ.*, 63 F.4th 186, 197 (2d Cir. 2023); *Keefe v. N.Y. L. Sch.*, 71 A.D.3d 569, 897 N.Y.S.2d 94, 95 (1st Dep't 2010).

Under New York law, the existence of an implied contract is a question of fact. *See Rynasko*, 63 F.4th at 198 (citing *New Windsor Volunteer Ambulance Corps v. Meyers*, 442 F.3d 101, 112 (2d Cir. 2006)). At this preliminary stage, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. The focus is not on whether the plaintiff will ultimately prevail, but on whether they are entitled to offer evidence to support their claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

> ii.  *Ms. Carney has adequately identified specific policy provisions as terms of the contract.*

RIT's claim that Ms. Carney has not identified any specific contractual provisions is baseless. Ms. Carney clearly referenced and relied upon identifiable obligations set forth in RIT's Title IX and Student Conduct policies, which courts routinely recognize as forming the basis of an implied contractual relationship. Ms. Carney identified the terms of this contract as included within RIT's policies, including its Bill of Rights (*see* dkt. 69-6) and Title IX Policy (*see* dkt. 69-1), and further identified specific policy provisions as terms of the contract, as follows:

- Its Title IX Policy § VII including definitions of "consent," "preponderance of evidence," and "relevancy," as they are articulated in its Title IX Policy § VII (B), (L), and (P). *See* dkt. 69 ¶162-3.
- Its Title IX Policy § VII (O) and the Bill of Rights. *Id.* at ¶166.

9

- Its Title IX Policy § IX (D) (1) in which it promises to provide appropriate training to individuals involved in the adjudication process. *Id.* at ¶169.
- Its Title IX Policy § IX (E) (6) (C). *Id.* at ¶159 (a).
- Its Title IX Policy § X, regarding the criteria under which appeal requests could be heard. *Id.* at ¶160.
- Its Title IX Policy § X (A). *Id.* at ¶159(b).
- Its Title IX Policy § X (E) (6) (c). *Id.* at ¶¶157-169.

None of these specific policy provisions are generalized aspirations. They are concrete procedural and substantive guarantees, sufficient to support a claim for breach. *See Doe v. Hobart & William Smith Colleges*, 2024 WL 1026371, at *13 (W.D.N.Y. 2024) (holding that specific provisions in college policies regarding evidence-gathering, adjudicator training, and limits on advisor participation were sufficiently concrete to support a breach of contract claim).

These specific contract provisions are also exactly the type of promises other courts in this District have found to support an allegation of breach of contract based upon school policies. *See* e.g., *Doe v. Rochester Inst. of Tech.*, 2024 U.S. Dist. LEXIS 42245, at *18 (W.D.N.Y. 2024) (recognizing that a university's express commitment to apply a preponderance-of-the-evidence standard in disciplinary proceedings constitutes a sufficiently specific promise to support a breach of contract claim); *Doe v. Princeton Univ.*, 30 F.4th 335, 347 (3d Cir. 2022) (holding that a breach of contract claim based on failure to apply the preponderance standard could proceed where the university allegedly disregarded exculpatory evidence, failed to assess the full evidentiary record neutrally, and made inconsistent credibility findings); *Doe v. Syracuse Univ.*, 440 F. Supp. 3d 158, 179 (N.D.N.Y. 2020) (finding that plaintiff plausibly alleged a failure to apply applicable standard of proof where conduct board found complainant credible without resolving discrepancies in her statements); *Doe v. Hobart & William Smith Colleges*, 546 F Supp 3d 250 (W.D.N.Y. 2021) (holding that pleading on information and belief that adjudicators were not appropriately trained, was appropriate where it was plausible the college failed to train its

adjudicators, a fact within the college's exclusive knowledge); *Menaker v. Hofstra Univ.*, 935 F.3d 20, 34 (2d Cir. 2019) (finding, on motion to dismiss, allegations that the plaintiff was terminated despite the fact that university official "knew that at least one of the accusations" against the plaintiff was false, that university official failed to provide investigation report after promising to do so, that the university disregarded the process provided for in its harassment policy by failing to provide opportunity to submit a written response or "written determination of reasonable cause" sufficient to allow inference of bias).

B. <u>Ms. Carney Has Alleged RIT Breached Specific Contractual Obligations.</u>

The ATPC also set forth in detail how RIT breached its contractual promises (*see* dkt. <u>69</u> ¶¶ 153-177) when Ms. Carney alleged:

- RIT violated its contract (the terms of which are included, in part, within RIT's policies, including its promise to maintain her privacy in its Title IX Policy § VII (O) and the Bill of Rights) to protect third party plaintiff's privacy when it sent the Amended Notice of Allegations meant for third party plaintiff to another student. *See* also id.https://ecf.nywd.uscourts.gov/doc1/12906621195, ¶¶ 60-63.
- RIT made a further written promise to third party plaintiff that "RIT [would] take all reasonable measures to protect [her] privacy and the integrity of the investigation." *See* dkt. <u>69-3</u>.
- RIT violated the terms of its contract (the terms of which are included, in part, within RIT's policies, including in its Title IX Policy § IX (D) (1) in which it promises to provide appropriate training to individuals involved in the adjudication process) when it failed to train the hearing board as promised, as more fully described in dkt. <u>69</u> ¶¶ 34, and 24-152.
- RIT violated its contract (the terms of which are included, in part, within RIT's policies, including in its Title IX Policy § IX (D) (6) (b)) when the hearing board based their judgments in improper stereotypes about how a party or witness would or should act under the circumstances and drew inferences about the determination of responsibility based solely on third party plaintiff's refusal to answer cross-examination or other questions, including its guidance on how determinations regarding responsibility may be made. *See id.* at¶¶ 124-8.
- RIT violated its contract (the terms of which are included, in part, within RIT's policies, including in its Title IX Policy § VII (B), (L), and (P), and as more fully described in the paragraphs located under the headers "The Hearing" and "Written Determination" in the ATPC) when it refused to adjudicate third party plaintiff's complaint using the articulated definitions of "consent," "preponderance of evidence," and "relevancy".

- RIT violated its contract with third party plaintiff when it created a Notice of Outcome that did not abide by its promises in its Title IX Policy § § IX (E) (6) (c) because it failed to:
  - accurately identify third party plaintiff's allegations against plaintiff, as this letter identified nine (9) encounters but third party plaintiff only made a formal complaint of three (3) instances of sexual harassment, as more fully described in *id.* ¶ 104.
  - find any facts supporting the determination, as described in *id.* ¶¶ 105-6, 108.
  - articulate a rationale for the determination regarding responsibility, as described *id.* ¶¶ 110-118.
- RIT failed to abide by its timeline obligation under this contract when it:
  - Failed to deliver the written Outcome Letter within 10 days of the completion of the hearing, as more fully described in *id.* ¶ 101, and as required by its Title IX Policy § IX (E) (6) (C).
  - Delayed delivering the written Notice of Outcome, pushing back the deadline for the parties to submit a request to appeal, as required pursuant to RIT's Title IX Policy § X (A), as described in *id.* ¶135 above.
  - Set the appeal request deadline for two days after plaintiff graduated, causing RIT to no longer have jurisdiction over plaintiff to adjudicate the alleged violation of its Title IX Policy and unilaterally mooting third party plaintiff's appeal, as more fully described in *id.* ¶¶ 136-9, 144.
- RIT violated the terms of its contract with Ms. Carney by denying Ms. Carney's appeal request, despite her appeal being submitted on time and based on one of the three eligible grounds RIT allows under its Title IX Policy, as described in *id.* ¶¶ 148-50 and 160-1.
- In breaching this contract third party defendant RIT did not act in good faith in its dealings with third party plaintiff as more fully described in *id.* ¶¶ 48-152.

These allegations are specific allegation of breaches of contract that go well beyond "general policy statements." They concern discrete, enforceable obligations imposed by RIT upon itself, all of which are alleged to have been materially breached.

C. RIT's "Substantial Compliance" Argument Is Inappropriate at this Stage.

RIT argues that it "substantially complied" with its own policies. Even assuming *arguendo* that the doctrine of substantial compliance is applicable in this context, courts in the Second Circuit have consistently recognized that such a defense is fact-intensive and therefore inappropriate for resolution at the motion to dismiss stage. *See Doe v. Quinnipiac Univ.*, 404 F. Supp. 3d 643, 667 (D. Conn. 2019) (denying summary judgment on a breach of contract claim, finding that the interpretation of contract terms and compliance with policies are fact-specific

issues); *Bergeron v. Rochester Inst. of Tech.*, 2020 U.S. Dist. LEXIS 241125, at *12 (W.D.N.Y. 2020) ("[f]act-specific question[s] cannot be resolved on the pleadings.") (internal citations omitted); *Radwan v. Manuel*, 55 F.4th 101, 140 (2d Cir. 2022) (finding sufficient evidence of pretext and gender discrimination on Title IX claim based on, inter alia, purported procedural irregularities, including the university's failure to refer the plaintiff's case to the student disciplinary authority or to give the plaintiff the opportunity to contest the violation or penalty imposed "before a neutral decisionmaker," noting that although the university argued none of the procedural issues showed pretext or undermined its misconduct determination, such issues were "fact-specific" and could not be resolved on summary judgment).

Moreover, the doctrine of substantial compliance does not allow an institution to ignore *mandatory* or *material* policy requirements. In *Doe v. Syracuse Univ.*, the court denied the university's motion to dismiss in a Title IX case, rejecting its argument that it had "substantially complied" with procedures, because the plaintiff plausibly alleged that the university failed to meet express requirements governing hearing rights, procedures and impartiality. 2022 U.S. Dist. LEXIS 47053, at *18-23 (N.D.N.Y. 2022). Here, RIT's alleged failure to comply with specific provisions—such as mandatory timelines, content requirements for decisions, and its obligation to avoid bias—implicates the kind of clear, material deviations that courts in the Second Circuit have found legally significant. These are not minor or technical oversights; they go to the heart of the fairness and integrity of the process.

Accordingly, even if the doctrine of substantial compliance were available as a defense, it cannot justify noncompliance with express and material policy terms. And in any event, the fact-intensive nature of the defense precludes dismissal at the pleading stage.

D.  <u>Ms. Carney Has Sufficiently Alleged Damages.</u>

To state a claim for breach of contract, damages must be reasonably certain and not merely speculative, and that certainty pertains to the existence of damage, not the precise amount. *See Lily Meng v. New Sch.,* 686 F. Supp. 3d 312, 321 (S.D.N.Y. 2023). Ms. Carney's complaint identifies several distinct categories of damages that flow directly from RIT's breach of its contractual obligations, as detailed in its Title IX Policy, Student Bill of Rights, and representations to students including reputational damage, emotional distress, and loss of educational opportunity. *See* dkt. <u>69</u>. Ms. Carney paid tuition in exchange, at least in part, for the educational benefit of a fair, impartial, and legally compliant Title IX adjudication process, upon her report of sexual harassment. She did not receive that. RIT failed to comply with its Title IX Policy by issuing a Written Determination Letter that did not include required findings of fact, rationale, or conclusions tied to the policies at issue. *Id.* at ¶¶ 104–110. The outcome letter addressed nine allegations when only three were properly noticed, violating the specific procedural promises made to Ms. Carney. *Id.* at ¶¶ 74, 104. The final outcome letter employed victim-blaming, sex-stereotyped language and illogically suggested she was not credible. *Id.* at ¶¶ 112–118, 124–128. Ms. Carney was sued for defamation based on the very statements published by RIT in this letter—a fact which cannot be denied (*see* dkt. <u>14</u> ¶¶ 28, 48, 52, 56, 60, 64, 68, 72, and 76)—not based on Carney's direct statements. *Id.* at ¶¶ 6–7, 183, 190. Ms. Carney's ability to fully access and participate in her education and campus life was also lessoned when RIT mistakenly disclosed her private information to another student, violating its privacy policy and further isolating Ms. Carney socially. *Id.* at ¶¶ 62–67. RIT's response to Ms. Carney's complaint chilled Ms. Carney's participation in student life, particularly on the rowing team. *Id.* at ¶¶ 64, 95, 176. All these damages directly stemmed from RIT's defective

investigation and resulting Outcome Letter. *Id.* at ¶¶ 131–134, 176. These are not speculative injuries—they are real, traceable, and directly tied to RIT's alleged failures.

## IV.    CARNEY HAS ADEQUATELY PLED A CLAIM FOR NEGLIGENCE

To succeed on a negligence claim, a plaintiff must establish a legal duty, a breach of that duty, proximate causation, and damages. *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 361 (N.D.N.Y. 2014). *See also Doe v. Jesuit*, 2024 U.S. Dist. LEXIS 216335, at *27 (W.D.N.Y. 2024).

### A.    Carney's Negligence Claim is Not Duplicative of Her Breach of Contract Claim.

It is well-settled that "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389-90 (NY 1987). *See also Prasad v. Cornell Univ.*, 2016 U.S. Dist. LEXIS 161297, at *73 (N.D.N.Y. 2016). Thus, courts often dismiss tort claims where they are duplicative of a simultaneously pled breach of contract claim. *See Rolph v. Hobart & William Smith Colls.*, 271 F. Supp. 3d 386, 409 (W.D.N.Y. 2017). Whether a legal duty exists is generally a question of law for the court. *Roberts v. Los Alamos Nat'l Sec., LLC*, 278 F. Supp. 3d 651, 657 (W.D.N.Y. 2017). However, whether there is a legal duty is "necessarily fact-specific." *Kloner v. United States*, 196 F. Supp. 3d 375, 386 (E.D.N.Y. 2016). *See also Roberts* 278 F. Supp. 3d at 657 ("…although the answer to that question can depend on the underlying facts. . . If a duty exists, then it is for the finder of fact to determine whether the duty was breached and if so, whether that breach proximately caused the plaintiffs injury."). Generally, "the existence of a duty may arise either under common law principles or by statute." *Avis Budget Car Rental, LLC v. JD2 Envtl., Inc.*, 2016 U.S. Dist. LEXIS 40064, at *36 (E.D.N.Y. 2016).

While this District has not yet specifically found that university's also have an independent legal duty of care under Title IX (*compare Doe v. Univ. of St. Thomas*, 368 F. Supp.

3d 1309, 1316–19 (Minn. Dist. Ct. 2019) (holding that a duty of reasonable care applies in Title IX disciplinary processes)), courts in this District, as well as the Supreme Court, have concluded that plaintiffs may "pursue[] a concurrent state-law negligence claim" where such allegations arise out of or relate to the same allegations at issue for a Title IX claim (i.e., a university's response to or conduct in investigating or adjudicating a Title IX report). *See, e.g.*, *Doe v. Ithaca Coll.*, 2024 U.S. Dist. LEXIS 162936, at *35–36 ("the fact that Title IX requires that a plaintiff prove a higher standard of culpability or notice does not inherently preclude him or her from pursuing a concurrent state-law negligence claim."); *Niles v. Nelson*, 72 F. Supp. 2d 13, 18–20 (N.D.N.Y. 1999) ("Defendants next argue that because Plaintiffs' negligence claim arises out of the same set of facts giving rise the Title IX claim, it is inseparable from the Title IX claim and, thus, should be dismissed as duplicative. The Court disagrees . . . the Court finds that Plaintiffs may maintain a negligence cause of action against the School Board notwithstanding their claims pursuant to Title IX."); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 US 274, 291 (1998) ("our decision does not affect any right of recovery that an individual may have . . . as a matter of state law."); *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 88–95 (2d Cir. 2011) (declining to find any inconsistency with the assertion of both a Title IX claim related to sexual harassment and a claim of negligent supervision as to that same harassment). Thus, it is reasonable to conclude that a violation of Title IX and its related regulations may also serve as allegations for a breach of legal duty for negligence.

In this case, Ms. Carney's negligence claim is separate and distinct from her breach of contract claim because it is based in RIT's independent legal duties under Title IX, VAWA, FERPA, and New York State Education Law, to protect Ms. Carney's privacy and respond to her reports of sex-based harassment in clear, specific manners. More specifically, while there is "no

cause of action in the State of New York sounding in negligent prosecution or investigation"

(*Doe v. Syracuse Univ.*, 2022 U.S. Dist. 47053, at *29 (N.D.N.Y. 2022)), RIT was required, by

these various laws, to respond to Carney's reports of sex-based harassment in a certain manner

and in accordance with specific standards. *See, e.g.*, 34 C.F.R. § 106.45(b)(1)(iii) ("A recipient's

grievance procedures must . . . [r]equire any individual designated by a recipient as a Title IX

Coordinator, investigator, decisionmaker, or any person designated by a recipient to facilitate an

informal resolution process, not have a conflict of interest or bias for or against complainants or

respondents generally or an individual complainant or respondent . . . any person who facilitates

an informal resolution process, must not rely on sex stereotypes and must promote impartial

investigations and adjudications of formal complaints of sexual harassment."); 34 C.F.R. §

106.45(b)(1)(iii) ("A recipient's grievance procedures must . . . [r]equire any individual

designated by a recipient as a Title IX Coordinator, investigator, decision-maker, or any person

designated by a recipient to facilitate an informal resolution process . . . receive training on . . .

issues of relevance of questions and evidence"); N.Y. Educ. L. Article 129-B (reports of sex-

based harassment "must be investigated and adjudicated [. . .] by individuals who receive annual

training in conducting investigations of sexual violence, the effects of trauma, impartiality[.]");

N.Y. Educ. L. Article 129-B, § 6444(5)(b)(iii) ("Every institution shall ensure that every student

be afforded the following rights. . . access to at least one level of appeal of a determination

before a panel, which may include one or more students, that is fair and impartial and does not

include individuals with a conflict of interest.").

       Nevertheless, RIT also had an independent legal duty to protect Carney from the

foreseeable harm caused by its employees unfair, biased, and/or improper sex-based harassment

investigation and disciplinary proceedings. *See Doe v. Ithaca Coll.*, 2024 U.S. Dist. LEXIS

162936, at *38–40 (N.D.N.Y. 2024). While "New York has affirmatively rejected the doctrine of in *loco parentis* at the college level and colleges generally have no legal duty to shield their students from dangerous activity of other students[,]" like the court found in *Doe v. Ithaca Coll.*, the harm alleged by Ms. Carney here is "related to the sexual harassment and abuse/assault" but was not directly caused by one of its students; "instead [the harm was caused] by the actions [or inactions] of its employees." 2024 U.S. Dist. LEXIS 162936, at *38. In *Doe v. Ithaca Coll.*, the court explained that "[a] critical consideration in determining whether a duty exists is whether the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the best position to protect against the risk of harm . . . such a relationship of control exists where the third party is employed by the defendant." *Id.* at *39 (internal quotations and citations omitted). *See also Sokola v. Weinstein*, 187 N.Y.S.3d 493, 499–500 (Sup. Ct. NY County 2023) (discussing existence of special relationship between an employer and a tortfeasor-employee because "the negligence of the employer . . . arises from its having placed the employee in a position to cause foreseeable harm . . . the duty of care in supervising an employee extends to any person injured by the employee's misconduct").

Here, like the plaintiff in *Doe v. Ithaca Coll.*, Ms. Carney specifically alleges that the non-defendant individuals who investigated and adjudicated her report of sexual harassment/assault were employees, staff, and/or faculty of defendant RIT (i.e., two CSCCR administrators and an independently hired attorney). *See* dkt. <u>69</u>, ¶¶ 79–82. Thus, she plausibly alleges that an employer-employee relationship existed between defendant RIT and those individuals. *See Doe*, 2024 U.S. Dist. LEXIS 162936, at *40. Defendant RIT, therefore, had a duty—and was in the best position—to protect Ms. Carney from the foreseeable risks of harm caused by its employees' unfair, biased, and/or improper sex-based harassment investigation and

disciplinary proceedings. *See id. See also Heath v. EcoHealth All.*, 2024 U.S. Dist. LEXIS 231002, at *7 (S.D.N.Y. 2024) ("The 'key' consideration critical to the existence of a duty in these circumstances is that the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the best position to protect against the risk of harm; and that the specter of limitless liability is not present because the class of potential plaintiffs to whom the duty is owed is circumscribed by the relationship.") (internal quotations and citations omitted). *See also Faiz*, 64 F. Supp. 3d at 361–62 ("a duty may be imposed upon a college when it has encouraged its students to participate in an activity and has taken affirmative steps to supervise and control the activity.").

Because Carney's claim for negligence arises out of defendant RIT's independent legal duties to respond to Carney's reports of sex-based harassment with the appropriate standard of care, it is not duplicative of her breach of contract claim.

B. <u>RIT Breached Their Legal Duties.</u>

Because RIT owed Carney an independent duty of care (as explained above), its failure to ensure a fair, unbiased proceeding, provide adequate training to its investigators, and comply with these mandatory legal standards, constituted a breach of those duties. Ms. Carney sufficiently alleged these breaches in her Amended Complaint.

For example, Carney alleged RIT breached its legal duty under various federal statutes and their implementing regulations by: (1) impermissibly relying on sex-role stereotypes and biases in making its decisions (*see* dkt. <u>69</u>, ¶¶ 27, 29, 120, 197), in violation of 34 C.F.R. § 106.45(b)(1)(iii); (2) failing to train both decision-makers and investigators on issues of relevance (*id.* at ¶¶ 24, 27, 197), in violation of 34 C.F.R. § 106.45(b)(1)(iii); (3) failing to provide annual training on issues of dating violence, domestic violence, sexual assault, and stalking and on how to conduct an investigation and hearing process that protects the safety of

victims and promotes accountability (*id*. at ¶ 25, 197) in violation of the Violence Against Women Act's Amendments to the Clery Act; (4) failing to provide any recent or relevant training materials to any of the individuals who served as decision makers in RIT's adjudication of Ms. Carney's complaint, as all the materials are dated "2020"— prior to RIT's hiring of any of the individuals who served as decision makers in its adjudication of Ms. Carney's complaint (*see id*. at ¶¶ 30, 197 and dkt. 69-2), in violation of 34 C.F.R. § 106.45(b)(10) (i)(D); and (5) ignoring Ms. Carney's concerns about RIT's improper and non-consensual disclosure of her private, protected information, and failing to take any steps to remedy such disclosure (*see* dkt. 69 at ¶¶ 60-4, 197), in violation of both 34 C.F.R. § 106.45(b)(5) and FERPA, 20 U.S.C. § 1232g.

RIT also breached its legal duty under New York State Education law by: (1) improperly suggesting Ms. Carney is at fault and blaming her for not acting in a particular manner to avoid such crime or violations (*see* dkt. 69 at ¶ 197; dkt. 69-14) ("The Complainant agreed to go out to eat with you on several occasions the same morning or the morning following you allegedly raping her; The Complainant drove to your house sober in her own car on at least one occasion; seemingly having the ability to leave at any point but chose to spend the night at your home;" and "The Complainant alleges that after you sexually assaulted her on two prior occasions, she left the safety of her home to go to your house."), in violation of N.Y. Educ. L. Article 129-B § 6443 (6); (2) failing to ensure that Ms. Carney's report of sex-based harassment was "investigated and adjudicated [. . .] by individuals who receive annual training in conducting investigations of sexual violence, the effects of trauma, impartiality [. . .]," in violation of N.Y. Educ. L. Article 129-B (*see* dkt. 69 ¶¶ 24, 26, 197); (3) creating policies that are plainly inconsistent with New York State Education Law. *Compare* N.Y. Educ. L. Article 129-B, §

6444(5)(b)(iii) ("Every institution shall ensure that every student be afforded the following rights. . . access to at least one level of appeal of a determination before a panel, which may include one or more 32 students, that is fair and impartial and does not include individuals with a conflict of interest."), *with* Title IX Appeal Board ("TAP") (*see* dkt. 69-1, Exhibit 1) ("An appeals officer will review the appeal request and make a threshold determination regarding the timeliness of the appeal and whether the appeal is based on the one of the grounds listed in this Policy. The party requesting an appeal must show that the grounds for an appeal request have been met."); and (4) forcing Ms. Carney to repeatedly relay her report and the incident over and over, often to persons with the full details already provided to and written for them (*see* dkt. 69, ¶¶ 95, 197) in violation of both, N.Y. Educ. L. Article 129-B § 6443 (7) and VAWA.

C. RIT Proximately Caused Carney's Injuries and Damages.

At the pleading stage, a plaintiff is not required to prove causation, only to allege facts sufficient to render it plausible that the defendant's breach was a proximate cause of their injury. *See Koeller v. Numrich Gun Parts Corp.*, 675 F. Supp. 3d 260, 270 (N.D.N.Y. 2023) (holding that plaintiffs adequately pleaded damages—including monetary loss, identity theft risk, emotional distress, and embarrassment—sufficient to survive a motion to dismiss). An action may be considered a proximate cause if there is a "direct relation between the injury asserted and the injurious conduct alleged." *Childers v. NY & Presbyt. Hosp.*, 36 F. Supp. 3d 292, 311 (S.D.N.Y. 2014) (quoting *In re Am. Exp. Co. S'holder Litig.*, 39 F.3d 395, 399 (2d Cir. 1994)) (internal citation omitted). That is exactly the case here. Ms. Carney alleged that RIT, by virtue of its obligations under Title IX, New York Education Law § 129-B, FERPA, VAWA, and its own institutional policies, owed her a duty to conduct an impartial, fair, and lawfully compliant investigation of her sexual harassment complaint. *See* dkt. 69 ¶¶ 19-22, 193-195. She further

alleged that RIT violated that duty through numerous acts and omissions, including: (1) failing to train decisionmakers as required by law (*id.* at ¶¶ 24-34, 193(d)-(g)); (2) conducting a hearing in a traumatizing and biased manner (*id.* at ¶¶ 83-97, 193(a)-(b)); (3) issuing a written determination that ignored key facts, relied on sex stereotypes, and violated her privacy (*id.* at ¶¶ 99-131, 193(c), (h)). Ms. Carney alleged that RIT's conduct foreseeably and proximately caused identifiable harms—including reputational damage, severe emotional distress, and exposure to further harm via the publication of RIT's flawed outcome letter. *Id.* at ¶¶ 131–134, 197–198.

Carney explicitly alleges that RIT's failures were a substantial factor in the chain of events leading to her injury. For example, she alleged: (1) RIT's late issuance of the outcome letter and improper denial of her appeal foreclosed institutional remedies and left her vulnerable to further harm from Koszkul's retaliatory defamation suit (dkt. 69 at ¶¶ 135–147); (2) the biased, hostile hearing environment and victim-blaming rationale in the written decision exacerbated her psychological trauma and caused reputational damage (*id.* at ¶¶ 86–99, 124–129); (3) RIT's improper disclosure of her allegations to another student directly undermined her privacy, a harm specifically contemplated by FERPA and Education Law § 129-B (*id.* at ¶¶ 60–67). These facts, taken as true, support a plausible inference that RIT's conduct proximately caused Ms. Carney's harms. At this stage, that is all that is required.

RIT argues that Ms. Carney has not alleged "concrete" damages because she does not quantify the extent of her emotional distress or reputational harm. But under New York law, damages for psychological injury and reputational harm are recoverable in negligence claims and need not be detailed with specificity at the pleading stage. *See Gilmore v. Family Dollar*, 2024 U.S. Dist. LEXIS 111823, at *4 (W.D.N.Y. 2024) ("Under the direct duty theory, a plaintiff may recover for emotional injuries caused by a defendant's breach of a duty owed to [him].") (internal

quotations and citations omitted); *see also Ornstein v. N.Y. City Health & Hosps. Corp.*, 10 N.Y.3d 1, 6 (NY 2008) (holding that a plaintiff may recover for emotional distress where the defendant owed a duty to plaintiff and breached that duty, resulting directly in emotional harm, even if he did not suffer a physical injury).

Ms. Carney's allegations of severe emotional harm, inability to access support resources, reputational injury, and economic losses are all plausible and sufficiently particularized to withstand dismissal. *See* dkt. 69 at ¶¶ 97, 131–133, 197–198.

## V.    CARNEY HAS SUFFICIENTLY PLED A CLAIM FOR INDEMNIFICATION

Contrary to RIT's assertions, Ms. Carney has adequately stated a claim for indemnification. While RIT correctly argues that indemnification is unavailable for intentional torts (*see* dkt. 77, pg. 5), Ms. Carney's claim for indemnification is not predicated on an intentional tort but rather on RIT's failure to properly investigate and adjudicate her report of sexual harassment, which contributed to the circumstances underlying the defamation allegations against Ms. Carney. Common law indemnity permits one who "is held liable solely on account of the negligence of another ... to shift the entire liability to the one who was negligent." *Thar Process, Inc. v. Sound Wellness, LLC*, 2023 U.S. Dist. LEXIS 400, at *16-17 (W.D.N.Y. 2023) (citing *D'Ambrosio v. City of New York*, 55 N.Y.2d 454, 461 (NY 1982)).

Contrary to RIT's claim in its MOL (*see* dkt. 77-1 pg. 6), Ms. Carney **does deny** the statements cited as defamatory were made by her. In fact, she very definitively states the alleged statements are not her statements, but rather RIT's statements. *See* dkt. 39 ¶¶ 44, 48, 52, 56, 60, 64, 68, and 72. Ms. Carney has sufficiently alleged that if any defamation occurred, it was RIT statements and a direct result of its mishandling of her report of Title IX sexual harassment. But to be clear, Ms. Carney's position is (1) that RIT made and published the alleged defamatory

statement and not Ms. Carney and therefore RIT bears responsibility for any consequences, and (2) RIT's negligence in its response to her report is the actual cause of the alleged defamatory statements' publication. This is precisely the circumstance in which indemnification is appropriate. *See Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198, 221 (E.D.N.Y. 2004) (explaining that under New York law, common law indemnification is available when a party is held liable solely for the wrongdoing of another).

Further, Ms. Carney maintains that her report of Title IX sexual harassment was true, but was RIT distorted her report allegations by reframing, expanding, and formalizing them into a Title IX record that no longer reflected her intended meaning or scope. *See* dkt. <u>69</u> ¶157. It is because RIT failed so extraordinarily in its duty (to both Ms. Carney and Mr. Koszkul) to respond to her report of sexual harassment, that it resulted in its authoring the prejudicial and inaccurate outcome letter that Mr. Koszkul bases his defamation claim upon. *See* dkt. <u>14-3</u>. In doing so, RIT became the true author of the narrative—not Ms. Carney—and set her up to face liability for statements she did not draft, approve, or disseminate. RIT's deliberate failure to conduct a fair, neutral process—not Ms. Carney's confidential report (which RIT encouraged her to make)—is what ultimately subjected her to this defamation claim. This makes indemnification entirely appropriate under New York State defamation law. *See McGinty v. Sullivan*, 2019 N.Y. Misc. LEXIS 35561, at *1–2 (Sup Ct, Queens County 2019) (denying motion to dismiss third-party complaint for indemnification and contribution in defamation case, holding that factual allegations were sufficient to state a claim, and noting that the merits of the claim are not considered on a pre-discovery CPLR 3211(a)(7) motion).

Additionally, while defamation is an intentional tort, it is routinely held that third parties can be held vicariously liable for the intentional torts and law violations due to special

relationships such as employer employee, as well as contractual relationships. *See, e.g.*, *Sokola v. Weinstein*, 78 Misc. 3d 842, 854 (Sup Ct, NY County 2023); *Park Place Entertainment Corp. v Transcontinental Ins. Co.*, 225 F. Supp. 2d 406, 412 (SDNY 2002). Employers for instance, can be held liable for the intentional sexual harassment and defamation committed by their employees and they may be liable when they are negligent for the "acts of an employee outside the scope of his or her employment." *Sokola*, 78 Misc. 3d at 853. Likewise, courts have recognized that colleges may be held liable for the sexual harassment under Title IX when the institution exercises control over the context in which the misconduct occurred and fails to act reasonably. Given that the unique relationship between universities and their students as it relates to its obligations to investigate reports of sexual harassment has not been addressed in the context of defamation and indemnity, it is not clear whether that relationship has bearing on indemnification, or how the theory of indemnity should be applied to common law defamation in these circumstances, where RIT owed a special duty to its complainant and its negligence caused the alleged defamation case. Because of the novel or unsettled issues at play at this stage, dismissal is unwarranted, as further discovery is necessary to determine RIT's role and liability.

## VI.    CARNEY HAS SUFFICIENTLY PLEAD A CLAIM FOR CONTRIBUTION

Under New York law, a defendant subject to liability in tort may assert a contribution claim against any other tortfeasor—whether joint, concurrent, successive, independent, alternative, or intentional—so long as they share responsibility for the same injury. *See Silverman v. Meister Seelig & Fein, LLP (In re Agape World, Inc.)*, 467 B.R. 556, 578 (Bankr. E.D.N.Y. 2012). Importantly, a right to contribution exists even where the third-party defendant owes no duty directly to the plaintiff. It is enough that the third-party's breach of duty

contributed to or exacerbated the defendant's liability. *Raquet v. Braun*, 90 NY2d 177, 182 (1997).

As alleged in the ATPC, RIT published the Notice of Allegation to another student without Ms. Carney's permission or knowledge (*see* dkt. 69, ¶¶ 62-7). These same statements are the basis of Mr. Koszkul's defamation claim. Contribution is therefore not only proper—it is essential.

A. New York Law Permits Contribution Claims Against Third Parties for Intentional Torts.

Courts interpreting New York law have consistently held that intentional tortfeasors may seek contribution from other intentional tortfeasors. *Gumowitz ex rel. W. 79th St. Assoc. v. First Fed. Sav. & Loan Assn.*, 1994 U.S. Dist. LEXIS 9160 at *2-3 (S.D.N.Y. 1994) (citing *McCoy v. Goldberg,* 778 F. Supp. 201, 205 (S.D.N.Y. 1991)) (additional internal citations omitted); *see also Massachusetts Mut. Life Ins. Co. v. Weinbach*, 635 F. Supp. 1460, 1462 (S.D.N.Y. 1986) (finding that contribution under New York law is available among joint or concurrent tort-feasors regardless of the degree or nature of the concurring fault). Defendant RIT itself concedes this point in its motion. *See* dkt. 77-1, pg. 8.

Nonetheless, RIT misleadingly cites *Langley v. Coughlin*, 715 F. Supp. 522, n.26 (S.D.N.Y. 1989), (dkt. 77-1 pg. 8) for the broad claim that contribution is unavailable for intentional torts. But contemporary and subsequent decisions - *McCoy*, *Gumowitz*, and others - squarely reject that position. Courts have repeatedly reaffirmed that New York's contribution statute applies even when the underlying tort is intentional.  As the court recognized in *Wolongevicz v. Town of Manlius*, "an action for contribution may be maintained between concurrent, successive, independent, alternative, and even intentional tort-feasors, who have caused the same injury to plaintiff." 2018 U.S. Dist. LEXIS 130274, at *60 (N.D.N.Y. 2018).

The critical question is not whether the tort was intentional—but whether the parties share liability for the same injury. *Genger v. Sharon*, 910 F. Supp. 2d 581, 591 (S.D.N.Y. 2012).

    B.  <u>Carney Properly Alleges RIT as Joint Tortfeasors</u>

RIT claims it cannot be a joint tortfeasor with Ms. Carney but fails to cite any controlling authority to support that conclusion. Instead, it ignores the well-pleaded allegations showing RIT independently contributed to the alleged harm. Specifically, Ms. Carney alleges that RIT reframed and expanded her Title IX complaint and published the altered allegations in an official institutional document to a third party—without consent from either Ms. Carney or Mr. Koszkul.

Even if RIT's conduct were limited to republication (which it was not), the law is clear: a republisher is just as liable as the original speaker. *See Cianci v. New Times Publ'g Co.*, 639 F.2d 54, 60–61 (2d Cir. 1980); *Biro v. Condé Nast*, 883 F. Supp. 2d 441 (S.D.N.Y. 2012). Educational institutions are no exception. *See Davis v. Boeheim*, 24 N.Y.3d 262 (2014); *Van-Go Transp. Co. v. NYC Bd. of Educ.*, 971 F. Supp. 90 (E.D.N.Y. 1997).

Here, RIT did not merely repeat Ms. Carney's words—it authored and disseminated institutional documents containing those altered allegations, including findings of non-consensual sexual behavior, which are at the heart of Mr. Koszkul's reputational injury. *See* dkt. <u>69</u>, ¶¶ 54–64; dkt. <u>14</u>, ¶¶ 44, 48, 52, 56, 60, 64, 68, 72, 76; dkt. <u>14-3</u>.

Defamation under New York law requires a false statement, published without privilege or authorization, constituting fault (at minimum negligence), and causing special harm or constituting defamation per se. *Doyle v. AG Letitia James*, 733 F. Supp. 3d 191, 210 (W.D.N.Y. 2024). The ATPC alleges all elements—against both Ms. Carney and RIT. Ms. Carney specifically pleads that RIT's conduct exposed her to liability by reshaping her allegations, conducting a procedurally deficient process, and publishing those findings to third parties. *See* dkt. <u>69</u>, ¶¶ 191, 193–98.

C. <u>Courts Routinely Recognize Institutional Contribution for Reputational Harm</u>

The same principles applied in *Anderson v. Strong Mem. Hosp.*, 151 Misc. 2d 353, 358–60 (Sup. Ct. Monroe Cnty. 1991), where the court held that a newspaper's broken promise to maintain confidentiality gave rise to a viable contribution claim—even where the plaintiff had no direct right of action. The court emphasized that contribution is proper where the third party's breach of a voluntarily assumed duty caused or worsened the injury.

That logic applies with greater force here. RIT made express commitments to protect the privacy of Title IX complainants and respondents, to ensure impartial adjudication, and to avoid bias and harmful disclosures. *See* dkt. <u>69</u>, ¶¶ 24–48, 51. RIT's publication of reframed allegations in a flawed and untimely process directly contributed to the harm Mr. Koszkul claims—and exacerbated Ms. Carney's exposure to liability. Had she known RIT would distort and weaponize her complaint, she would not have reported at all. *See* Levy Decl. ¶¶ 11.

Like the court in *Anderson*, this Court should reject any effort to shield an institutional actor from contribution for reputational harm it helped create. Because the ATPC plausibly alleges RIT's role in causing the injury, dismissal of the contribution claim would contravene controlling law and factual plausibility standards.

**CONCLUSION**

For the foregoing reasons, Ms. Carney respectfully requests that the Court deny RIT's

Motion to Dismiss in its entirety and grant such other and further relief as the Court deems just

and proper.


Dated: April 18, 2025
   Rochester, New York

J. MORGAN LEVY FIRM, PLLC
*/s/ J. Morgan Levy, Esq.*
J. Morgan Levy, Esq.
24 N. Main Street, Ste. 2
Fairport, NY 1440
E: morgan@jmorganlevyfirm.com
P: 585-678-1179