UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
————————————————————————————

MARCEL KOSZKUL,

                        Plaintiff,                    Civil Action No.:
                                                      24 cv 06480 (EAW) (MWP)
v.

MICHELLE CARNEY,

                Defendant.
————————————————————————————

MICHELLE CARNEY,

                        Third-party Plaintiff,

v.

ROCHESTER INSTITUTE OF TECHNOLOGY,

                        Third-Party Defendant.

————————————————————————————


**ROCHESTER INSTITUTE OF TECHNOLOGY'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE AMENDED THIRD-
PARTY COMPLAINT OF MICHELLE CARNEY PURSUANT TO FED R. CIV. PROC.
12(b)(6)**


Laura A. Myers
Stephanie Hoppe Fedorka
**BOND, SCHOENECK & KING, PLLC**
*Attorneys for Third-party Defendant*
*Rochester Institute of Technology*
*Rochester, NY 14625-2825*
*Telephone: (585)362-4700*


1

# TABLE OF CONTENTS

**Page No.:**

**PRELIMINARY STATEMENT** ................................................................ 1

**ARGUMENT** ................................................................................ 2

I.    **CARNEY HAS NOT SUFFICIENTLY PLED A CLAIM FOR INDEMNIFICATION** ................................................ 2

    A. Indemnification is not available for intentional torts ......................... 2

    B. Indemnification is not available where the party seeking indemnification is partially at fault ................................... 3

    C. There is no basis to hold RIT vicariously liable for Carney's decision to make a Title IX report against Koszkul, which gave rise to the defamation claim ................................................ 3

II.   **CARNEY HAS NOT SUFFICIENTLY PLED A CLAIM FOR CONTRIBUTION** ...................................................... 4

    A. RIT is not a tortfeasor, or a joint tortfeasor, of any kind with respect to the underlying claim of defamation ........................... 4

III.  **CARNEY HAS NOT SUFFICIENTLY PLED A CLAIM FOR NEGLIGENCE** .......................................................... 6

    A. Carney's negligence claim is duplicative of her breach of contract claim ........................................................ 6

    B. Carney has not established a recognized legal duty .................... 7

    C. Carney has failed to sufficiently plead that RIT proximately caused her injuries and damages .................................... 9

IV.   **CARNEY HAS NOT SUFFICIENTLY PLED A CLAIM FOR BREACH OF CONTRACT** ................................................ 11

    A. Carney failed to identify specific contractual provisions that RIT breached .................................................... 11

    B. RIT substantially complied with its policies ....................... 13

C.  Carney has not sufficiently alleged harm or damages resulting
from any breach of contract ................................................................13

V.    RIT PROPERLY ARGUES CARNEY'S CLAIMS
ARE BARRED BY RES JUDICATA .............................................14

A.  Carney is not entitled to punitive damages .....................................15

B.  Carney is not entitled to attorney's fees .........................................16

VI.   RIT PROPERLY ARGUES CARNEY'S CLAIMS
ARE BARRED BY COLLATERAL ESTOPPEL .............................17

CONCLUSION ...............................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Alyeska Pipeline Service Co. v. Wilderness Soc.</u>,
   421 U.S. 240 (1975)................................................................... 16

<u>Anderson v. Strong Mem. Hosp.</u>,
   151 Misc.2d 353 (Sup. Ct. Monroe County 1991) ..................................... 6

<u>Barbagallo v. Marcum</u>,
   2012 U.S. Dist. LEXIS 66550 (E.D.N.Y. May 9, 2012)................................. 2

<u>Biro v. Condé Nast</u>,
   883 F.2d 441 (S.D.N.Y. 2012) ......................................................... 5, 6

<u>Bristol v. Town of Camden</u>,
   2024 U.S. Dist. LEXIS 94048 (N.D.N.Y. May 28, 2024)............................ 18

<u>Burgos v. Hopkins</u>,
   14 F.3d 787 (2d Cir. 1994) ........................................................... 15

<u>Cianci v. New Times Publ'g Co.</u>,
   639 F.2d 54 (2d Cir. 1980)........................................................... 5

<u>Davidson v. Capuano</u>,
   792 F.2d 275 .......................................................................... 15

<u>Davis v. Boeheim</u>
   883 F. Supp. 2d 441 (S.D.N.Y. 2012)................................................. 5

<u>Davis v. Halpern</u>,
   813 F.2d 37, 39 (2d Cir. 1987)...................................................... 14

<u>Dobkin v. New York Univ.</u>,
   278 A.D. 24 (1st Dept. 2000) ....................................................... 14

<u>Doe v. Columbia</u>,
   551 F. Supp.3d 433 (S.D.N.Y. 2021) ................................................ 17

<u>Doe v. Ithaca College</u>,
   2024 U.S. Dist. LEXIS 162936 (N.D.N.Y. 2024) .............................. 7, 8, 9

<u>Doe v. Syracuse Univ.</u>,
   440 F. Supp. 3d 158 (N.D.N.Y. 2020) ................................................ 8

Doe v. Union Coll.,
    2020 U.S. Dist. LEXIS 38136 (N.D.N.Y. Mar. 5, 2020) ............................................... 4

F.D. Rich Co., Inc. v. United States,
    417 U.S. 116 (1974)..................................................................................................... 17

Faiaz v. Colgate Univ.,
    64 F. Supp.3d (N.D.N.Y. 2014) .......................................................................... 4, 7, 13

Fordham-Coleman v. National Fuel Gas Distrib. Corp.,
    42 A.D.3d 106 (4th Dep't 2007) ................................................................................. 16

Gebser v. Lago Vista Indep. Sch. Dist.,
    524 U.S. 274 (1998)...................................................................................................... 7

Genger v. Sharon,
    910 F. Supp.2d 581 (S.D.N.Y. Nov. 19, 2012) ........................................................... 5

Harriram v. Fera,
    2023 U.S.Dist. LEXIS 114687 (S.D.N.Y. 2023) ........................................................ 17

Home Ins. Co. v. American Home Prods. Corp.,
    75 N.Y.2d 196 (1990)................................................................................................. 16

Hooper Assocs. v. AGS Computers, Inc.,
    74 N.Y.2d 487 (1989)................................................................................................. 17

Hunold v. City of New York,
    2024 N.Y. Misc. LEXIS 6610, 2024 NY Slip Op 51241(U) (Sup. Ct. NY
    County Sept. 10, 2024) ............................................................................................... 18

Karamoko v. New York City Housing Authority,
    170 F.Supp.2d 372 (S.D.N.Y. 2001) .......................................................................... 17

Kaufman v. Eli Lily & Co.,
    65 N.Y.2d 449 (1985)................................................................................................. 19

Leather v. Ten Eyck,
    180 F.3d 420 (2d Cir. 1999) ....................................................................................... 15

Leviton Mfg. Co. v. Reeve,
    942 F. Supp.2d 244, 270 (E.D.N.Y. 2013), amended (Mar. 23, 2013) .......................15

McCord v. Gov't Emps. Ins. Co.,
    2025 U.S.Dist LEXIS 45965 (Feb. 6, 2025) ........................................................ 15, 16

McGinty v. Sullivan,
    2019 N.Y. Misc. LEXIS 35561 (Sup. Ct., Queens County 2019) ............................... 3

McGuinn v. Smith,
    523 F. App'x 764 (2d Cir. 2013) ................................................................ 19

Morabito v. New York,
    2018 U.S. Dist. LEXIS 101502 (W.D.N.Y. 2018) .................................... 19

Morgan Art Found. Ltd. v. McKenzie,
    2019 U.S. Dist. LEXIS 109997 (S.D.N.Y. 2019) ....................................... 2

Niles v. Nelson,
    72 F. Supp. 2d 13 (N.D.N.Y. 1999) ........................................................... 7

Noakes v. Syracuse Univ.,
    369 F. Supp. 3d 397 (N.D.N.Y. Feb. 26, 2019) ......................................... 8

Norris v. Grosvenor Marketing Ltd.,
    803 F.2d 1281 (2d Cir. 1986) .................................................................. 18

Papelino v. Albany Coll. of Pharmacy of Union Univ.,
    633 F.3d 81 (2d Cir. 2011) ................................................................. 7, 11

Park Place Entm't Corp. v. Transcon. Ins. Co.,
    225 F. Supp. 2d 406 (S.D.N.Y. 2002) ........................................................ 4

Parker v. Blauvelt Volunteer Fire Co.,
    93 N.Y.2d 343 (1999) .............................................................................. 14

Pauk v. Board of Trustees,
    111 A.D.2d 17 (1st Dept. 1985) .............................................................. 14

Prasad v. Cornell Univ.,
    2016 U.S. Dist. LEXIS 161297 (N.D.N.Y. Feb. 24, 2016) ......................... 7

Quartararo v. Catterson,
    917 F. Supp. 919 (E.D.N.Y. 1996) .......................................................... 19

Raff v. Maggio,
    743 F. Supp. 147 (E.D.N.Y. 1990) .......................................................... 17

Regis-Dumeus v. Great Lakes Kraut Co., LLC,
    462 F. Supp. 3d 292 (W.D.N.Y. 2020) .................................................... 18

Rolph v. Hobart & William Smith Colls.,
    271 F. Supp.3d 386 (W.D.N.Y. 2017) ............................................... 6, 7, 8

Schachtler Stone Prods., LLC v. Town of Marshall,
    2024 U.S.Dist. LEXIS 158124 (N.D.N.Y. 2024) ...................................... 14

Sokola v. Weinstein,
    78 Misc. 3d 842 (Sup. Ct. N.Y. County 2023) ............................................................ 4

St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply,
    409 F.3d 73 (2d Cir. 2005) ........................................................................................ 2

Summit Valley Industries, Inc. v. United Brotherhood of Carpenters and Joiners,
    456 U.S. 717 (1982) ................................................................................................ 16

Thar Process, Inc. v. Sound Wellness, LLC,
    2023 U.S. Dist. LEXIS 400 (W.D.N.Y. Jan. 3, 2023) ............................................. 2, 3

Van-Go Transp. Co. v. NYC Bd of Educ.,
    971 F.Supp. 90 (E.D.N.Y. 1997) ................................................................................ 5

Vargas v. City of NY,
    377 F.3d 200 (2d Cir. 2004) ..................................................................................... 19

Vega v. State Univ. Of N.Y. Bd. Of Trs.,
    67 F. Supp.2d 324 (S.D.N.Y. 1999) ........................................................................ 17

Whitfield v. City of New York,
    96 F.4th 504 (2d Cir. 2024) ............................................................................... 14, 15

Yu v. Vassar Coll.,
    97 F. Supp. 3d 448 (S.D.N.Y. 2015) ......................................................................... 8

**Statutes and Regulations**

N.Y. C.P.L.R. § 1401 ...................................................................................................... 4

N.Y. C.P.L.R. § 1404 ...................................................................................................... 5

34 C.F.R. § 106.46 ......................................................................................................... 5

## PRELIMINARY STATEMENT

None of the arguments presented in Carney's Opposition overcome the fundamental flaws contained in Carney's Amended Third-party Complaint ("Complaint"), which require that Complaint to be dismissed.  In addition to being unable to establish injury in fact, Carney's claims for indemnification and contribution against RIT do not stand.  Carney seeks RIT's indemnification and/or contribution for a defamation claim, an intentional tort, and in New York there is no claim for indemnification or contribution of an intentional tort.  Contribution is also not available because RIT is not a joint-tortfeasor in the underlying defamatory conduct alleged by Koszkul.

With regard to Carney's breach of contract claim, she fails to specifically identify material contractual obligation(s) RIT allegedly breached, and further failed to identify specific damages which resulted directly from any alleged breach. With regard to Carney's negligence claim, in addition to failing to identify specific damages directly resulting from RIT's alleged negligence, Carney's claim for negligence is duplicative of her breach of contract claim.  Carney has also failed to identify a specific duty owed to her by RIT that was breached, which was the proximate cause of damages.

Carney's claims in this case are as fundamentally flawed as her prior Article 78 Action, because she cannot show she has sustained any damages solely as a result of RIT's Title IX decision.  While Carney may be able to claim damages stemming from the alleged sexual assault, or even from Koszkul's lawsuit, those damages were not caused by RIT's actions or RIT's Title IX decision.  For each of the reasons described above, Carney's Amended Third-party Complaint must be dismissed in its entirety.

## ARGUMENT

**I.    CARNEY HAS NOT SUFFICIENTLY PLED A CLAIM FOR INDEMNIFICATION.**

    A.    <u>Indemnification is not available for intentional torts.</u>

It is well established that "New York law does not permit common law indemnification against intentional torts." <u>Thar Process, Inc. v. Sound Wellness, LLC</u>, 2023 U.S. Dist. LEXIS 400, at *17 (W.D.N.Y. Jan. 3, 2023); <u>Barbagallo v. Marcum</u>, 2012 U.S. Dist. LEXIS 66550, at *11 (E.D.N.Y. May 9, 2012); <u>St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply</u>, 409 F.3d 73, 76 (2d Cir. 2005). Carney concedes this point of law. However, she argues that her claim for indemnification is not predicted upon an intentional tort, but rather "RIT's failure to properly investigate and adjudicate her report of sexual harassment, which contributed to the circumstances underlying the defamation allegations against [her]." Dkt. No. 80, at p.23. Carney's argument fails because the legal claim for which she seeks indemnification is <u>not</u> negligence, but rather, *<u>defamation</u>*, as that is the cause of action pending against her by Koszkul. It matters not what claim(s) Carney asserts against Third-Party Defendant RIT in her Complaint. The basis for indemnification arises from the underlying Complaint and causes of action asserted against her by Koszkul in this pending matter. <u>See</u>, <u>Thar Process, Inc.</u>, 2023 U.S. Dist. LEXIS 400, at *16-17 (dismissing claim for common law indemnification where the underlying cause of action for which the third-party defendant sought indemnification from the counter-defendant was fraudulent inducement—an intentional tort); <u>see also</u>, <u>Morgan Art Found. Ltd. v. McKenzie</u>, 2019 U.S. Dist. LEXIS 109997, at *64 (S.D.N.Y. 2019) (dismissing claim for indemnification involving underlying claim for defamation).  Because there is no dispute that Koszkul's claim against Carney is defamation, and defamation, an intentional tort, Carney's indemnification claim must be dismissed.

B.   <u>Indemnification is not available where the party seeking indemnification is partially at fault.</u>

Carney does not refute the point of law that "[w]hen the party seeking indemnification was himself partially at fault, the courts of [New York] State, and throughout the Nation generally, [have] refused to imply a right to …indemnification against another who played an effective role in causing the damage." <u>Thar Process, Inc.</u>, 2023 U.S. Dist. LEXIS 400, at *17. Instead, Carney denies she had any part in the underlying defamatory conduct that gave rise to this suit, arguing that her involvement was merely passive. This is incredulous. Koszkul's claim is fundamentally centered around the fact that ***Carney*** made a report to RIT through its established Title IX process, alleging that Koszkul engaged in certain sexual misconduct. Dkt. No. 14, ¶¶43-78; Dkt. No. 69, at ¶¶ 2-3. There is no dispute that Carney made such a report. Dkt. No. 69, at ¶¶ 3, 49-50. As is evident from the Final Investigation Report, the allegations presented by RIT are reiterations of Carney's factual representations of the incidents and events that she reported and shared as part of the comprehensive Title IX investigation process. Dkt. No. 69-11.

Based on the facts asserted in her Complaint and the attached exhibits, Carney engaged, at least in part, in the underlying defamatory conduct as alleged by Koszkul. Accordingly, Carney's involvement in the underlying claim bars her ability to recover any indemnification from RIT.[1] As such, Carney's claim for indemnification must be dismissed.

C.   <u>There is no basis to hold RIT vicariously liable for Carney's decision to make a Title IX report against Koszkul, which gave rise to the defamation claim.</u>

Carney appears to allege that RIT *may* be required to indemnify her through the doctrine of vicarious liability, which can be available in intentional torts and where there exists a special

---

[1] Carney does not offer any binding legal authority to support a contrary conclusion, and the cases which she cites for basic principles of common law indemnification are inapposite <u>See</u> <u>McGinty v. Sullivan</u>, 2019 N.Y. Misc. LEXIS 35561, at *1-2 (Sup. Ct., Queens County 2019).

relationship between the parties. Dkt. No. 80, at p. 25. This is not applicable in this case. Carney seeks indemnification vis-à-vis vicarious liability for her participation in the Title IX process established and maintained by RIT, and Koszkul's defamation lawsuit that flowed therefrom. However, courts in New York have consistently rejected the notion that a university has a general legal duty to shield students from the activity of other students. Doe v. Union Coll., 2020 U.S. Dist. LEXIS 38136, at *18 (N.D.N.Y. Mar. 5, 2020). Carney fails to provide any case law that resembles the present scenario, wherein a student seeks indemnification from a university for indemnification for defamation after that student accused another student of inappropriate misconduct and the university simply undertook its statutory obligations pursuant to Title IX.[2] In fact, case law has found the opposite. See, Faiaz v. Colgate Univ., 64 F. Supp.3d, 336  (N.D.N.Y. 2014) (rejecting argument that where a university 'supervised and controlled a biased and flawed investigation' gave rise to a duty by the university). Allowing such a claim to continue under the theory of "vicarious liability" would subject colleges and universities to a litany of meritless lawsuits by students, unhappy with a university's Title IX decision because the university simply carried out its statutorily imposed duty. As such, Carney's indemnification claim must be dismissed.

## II.     CARNEY HAS NOT SUFFICIENTLY PLED A CLAIM FOR CONTRIBUTION.

### A.     RIT is not a tortfeasor, or a joint tortfeasor, of any kind with respect to the underlying claim of defamation.

Claims for contribution pursuant to N.Y. C.P.L.R. § 1401 permit "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful

---

[2] The cases Carney cites are inapposite. Sokola v. Weinstein, 78 Misc. 3d 842, 854 (Sup. Ct. N.Y. County 2023) (involving allegations of sexual assault by the infamous Harvey Weinstein, against an actress, and the issue of whether the corporate defendants' knew or should have known of Mr. Weinstein's propensity to commit sexual assault, abuse, and/or harassment). The case at bar does not involve allegations of such intentional torts by RIT employees.  In Park Place Entm't Corp. v. Transcon. Ins. Co., 225 F. Supp. 2d 406 (S.D.N.Y. 2002) the indemnification was contractual in nature, which is not an issue in this case.

death, [to] claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought." N.Y. C.P.L.R. § 1404. However, Carney omits that "contribution is allowed only among ***joint tortfeasors***." Genger v. Sharon, 910 F. Supp.2d 581, 587 (S.D.N.Y. Nov. 19, 2012) (emphasis added).

Carney's claim for contribution from RIT relies on an incorrect factual assertion—that RIT is a joint tortfeasor in the underlying defamatory conduct. However, RIT is not a joint tortfeasor because it did not commit a tort against Koszkul. RIT's involvement in the defamatory allegations is limited to engaging in its legal obligation to investigate and adjudicate the allegations of sexual misconduct reported by Carney. RIT summarized and reiterated Carney's factual allegations against Koszkul in an outcome letter, which is a ***required*** part of the underlying Title IX proceeding.[3] Carney suggests that RIT's act of "republication" renders it "just as liable as the original speaker." Dkt. No. 80, at p. 27. In support, Carney offers Cianci v. New Times Publ'g Co., 639 F.2d 54, 60-61 (2d Cir. 1980), Biro v. Condé Nast 883 F. Supp. 2d 441 (S.D.N.Y. 2012), Davis v. Boeheim, 883 F. Supp. 2d 441 (S.D.N.Y. 2012) and Van-Go Transp. Co. v. NYC Bd of Educ., 971 F.Supp. 90 (E.D.N.Y. 1997), none of which are analogous or on point. Cianci and Biro both involved the issue of whether a newspaper or magazine, could be liable for defamation, when the defendants conveyed another party's defamatory statements. Carney seems to only cite to both cases for the simple and basic proposition that defamation claims may still proceed against parties that have "republished" allegedly defamatory statements even if they do not adopt them as their

---

[3] Ironically, throughout her Complaint, Carney alleges that RIT did not comply with its own policies and Title IX. However, now, in her opposition, Carney appears to take the position that it was RIT's compliance with those very same policies and regulatory requirements that effectively "set her up" for a defamation claim. Carney's argument is, in essence, but for RIT's obligation to communicate to Koszkul in writing, the allegations asserted against him which Carney wished RIT to investigate, Carney would not have been subject to this defamation lawsuit. Concurrently, however, Carney also complains that RIT did not do enough pursuant to Title IX and its implementing regulations. Carney cannot have it both ways. RIT was required pursuant to federal and state laws to provide the complainant and the accused _written notice of the allegations_ as a part of due process requirements. Allowing RIT to be sued for complying with its obligations pursuant to Title IX would be an absurd outcome. See, 34 C.F.R. § 106.46.

own. Unlike in <u>Cianci</u> and <u>Biro</u>, RIT is not a newspaper, magazine, or other media source. Further, RIT did not "republish" the statements for public consumption, it articulated and conveyed Carney's factual allegations in writing to Carney and Koszkul, as required by its policy and Title IX.

Carney claims for the first time in her opposition memo of law (with no evidentiary support) that RIT "altered" the allegations in the "institutional documents" and that RIT "distort[ed] and weaponize[d]" her internal Title IX complaint. Dkt. No. 80, at 24, 28. Further, Carney's Complaint does not include any factual assertions that RIT "altered", "distorted", or "weaponized" her factual allegations against Koszkul in the Title IX process. See Dkt. No. 69.[4] Therefore, Carney's generic and unsubstantiated statements in her Opposition should be totally disregarded by the Court in determining RIT's Motion to Dismiss. Because Carney has failed to provide legal support for her claim that RIT is liable in contribution for Koszkul's defamation claim as a result of carrying out its Title IX duties, Carney's contribution claim must also be dismissed.[5]

---

[4] Carney only asserts that RIT did not "accurately identify" her allegations because the outcome letter included nine encounters, but she only formally reported three. However, review of the Final Investigation Report attached to the Complaint demonstrates that Carney reported the additional encounters during the Title IX investigation, even if she only initiated the process by "formally" identifying three encounters. Dkt. No. 69-11.

[5] Carney's reference to <u>Anderson v. Strong Mem. Hosp.</u>, 151 Misc.2d 353, 358-60 (Sup. Ct. Monroe County 1991) is entirely misplaced and is not binding precedent. Notwithstanding, the case is not analogous to the facts here. That case involved a claim for contribution by a hospital and physician against a ***newspaper*** for publishing a photograph in the newspaper of a patient that was identified as having AIDS. The patient sued the hospital and physician, and the hospital and physician then sought indemnification and contribution from the newspaper. In <u>Anderson</u>, the patient was promised that he would not be identifiable in the published photograph. Here, there is no such promise that Carney's identity or that her reported allegations would not be disclosed, and in fact, RIT's policy makes clear that the university would prepare and issue a written notice of the allegations to the parties. Dkt. No. 69-1.

**III.    CARNEY HAS NOT SUFFICIENTLY PLED A CLAIM FOR NEGLIGENCE.**

    A.    <u>Carney's negligence claim is duplicative of her breach of contract claim.</u>

Carney correctly acknowledges, and thus concedes, that courts dismiss tort claims where such claims are duplicative of a simultaneously pled breach of contract claim. <u>Rolph v. Hobart & William Smith Colls.</u>, 271 F. Supp.3d 386, 409 (W.D.N.Y. 2017).  Carney does not contest that her breach of contract claim and negligence claim are premised upon the same factual allegations.

Instead, Carney offers a string cite of cases for the position that "courts in this District, as well as the Supreme Court, have concluded that plaintiffs may 'pursue[] a concurrent state-law negligence claim' where such allegations arise out of or relate to the same allegations at issue for a Title IX claim." Dkt. No. 80, at p.16.  Carney's reliance on such cases is mistaken as <u>all</u> of the cases are distinguishable.  These cases all stand for the position that a plaintiff who brings a cause of action under Title IX is not necessarily precluded from also asserting a concurrent negligence claim. <u>See</u>, <u>Doe v. Ithaca College</u>, 2024 U.S. Dist. LEXIS 162936, at *35-36 (N.D.N.Y. 2024) (court found that the plaintiff's negligence was not precluded by plaintiff's Title IX claim); <u>see also</u>, <u>Niles v. Nelson</u>, 72 F. Supp. 2d 13,17-20 (N.D.N.Y.  1999) (same); <u>see also</u>, <u>Papelino v. Albany Coll. of Pharmacy of Union Univ.</u>, 633 F.3d 81, (2d Cir. 2011) (allowing concurrent negligent supervision claim and Title IX claim); <u>Gebser v. Lago Vista Indep. Sch. Dist.</u>, 524 U.S. 274, 291 (1998). However, this is not relevant because the duplicative claim at issue is breach of contract and not a violation of Title IX.

Courts in this Circuit have routinely dismissed breach of contract and negligence claims as duplicative. <u>See</u>, <u>Rolph</u>, 271 F. Supp. 3d at 409; <u>Prasad v. Cornell Univ.</u>, 2016 U.S. Dist. LEXIS 161297, at *20 (N.D.N.Y. Feb. 24, 2016); <u>Faiaz</u>, 64 F. Supp. 3d 336, 362. Here too, the Court should dismiss Carney's negligence claim as duplicative of her breach of contract claim.

B.     <u>Carney has not established a recognized legal duty.</u>

Carney also alleges that her negligence claim should survive dismissal because RIT owed her an independent legal duty to protect her from harm caused by RIT's employees in "unfair, biased, and/or improper sex-based harassment investigation and disciplinary proceedings." Dkt. No. 80, at p. 17. Carney offers multiple theories for this alleged legal duty, all of which are not viable.

First, Carney tries to argue that RIT owed her a legal duty vis-à-vis statutory obligations under Title IX, and similar state laws. However, Carney acknowledges that courts in this District do not recognize that universities have an independent legal duty under Title IX. Dkt. No. 80, at 15. Courts in this District have overwhelmingly dismissed negligence claims arising from similar factual allegations involving Title IX investigations. <u>See</u>, <u>Doe v. Syracuse Univ.</u>, 440 F. Supp. 3d 158 (N.D.N.Y. 2020) (rejecting argument that university owed plaintiff duty to conduct its Title IX process with diligence and care, citing obligations under federal law, the Clery Act, accreditation standards); <u>see also</u>, <u>Rolph,</u> 271 F. Supp. 3d at 409 (rejecting argument that duty was created by contract/quasi-contract or accreditation standards imposed by Middle States Commission on Higher Education). New York also does not recognize a claim for negligent prosecution or investigation under these circumstances, either. <u>Noakes v. Syracuse Univ., 369 F. Supp. 3d 397, 420-21 (N.D.N.Y. Feb. 26, 2019);</u> <u>Prasad</u>, 2016 U.S. Dist. LEXIS 161297, at *13; <u>Yu v. Vassar Coll.,</u> 97 F. Supp. 3d 448, 484 (S.D.N.Y. 2015). Given that no such legal duty has been recognized in this District, Carney's negligence claim fails as a matter of law.

Carney also cites <u>Doe v. Ithaca College</u>, 2024 U.S. Dist. LEXIS 162936, at *38-40 (N.D.N.Y. 2024), in support of her argument that RIT owed her a duty of care. Carney argues that RIT had a duty of care related to the investigation and hearing process; to protect her from "foreseeable harm caused by its employees [*sic*] unfair, biased, and/or improper sex-based

harassment investigation and disciplinary proceedings." Dkt. No. 80, at 17. <u>Doe v. Ithaca College</u> is distinguishable, as the negligence claims asserted by the plaintiff in that case involved a student subjected to *sexual harassment* and *abuse* by a college employee. 2024 U.S. Dist. LEXIS 162936 at *38-40. Notably, <u>Doe</u> does not stand for the position that a duty of care exists simply by virtue of an employee-employer relationship, the analysis goes further. In <u>Doe</u>, the court examined whether it was foreseeable that the employee would have engaged in the type of conduct that was alleged to have harmed the plaintiff (student). The court considered the employee's alleged activities and whether or not the college would have or should have known that this employee was likely to cause harm to plaintiff. Ultimately, the court found that "any duty [the college] had to protect students from conduct by its employees [did] not extend to [the conduct at issue]." <u>Doe</u>, 2024 U.S. Dist. LEXIS 162936, at *44-45. Carney has not offered any facts regarding how RIT knew or should have known that the hearing officers would have engaged in the type of harm she alleges to have suffered. For these reasons, Carney's negligence claim must fail as a matter of law, and must be dismissed.

   C. <u>Carney has failed to sufficiently plead that RIT proximately caused her injuries and damages.</u>

  Carney argues that "RIT's failures were a substantial factor in the chain of events leading to her injury." Dkt. No. 80, at p. 22. Carney asserts three "facts" to support her claim of injuries. First, she asserts that "RIT's late issuance of the outcome letter and improper denial of her appeal foreclosed institutional remedies and left her vulnerable to further harm from Koszkul's retaliatory defamation suit." <u>Id</u>. However, Carney does not plausibly allege how RIT's delay actually caused her any harm or how such delay actually resulted in Koszkul's defamation suit. This argument is not supported by Carney's factual allegations or the documents incorporated by reference into the Complaint. Carney's personal opinion that if RIT had issued the letter a few days sooner, things

would have been different and she would not have been subject to this lawsuit, is merely speculative and is legally insufficient. Moreover, Carney has provided no factual basis for her conclusory assertion that the brief delay in RIT's issuance of the outcome letter somehow impacted the outcome of her appeal. <u>See</u>, Dkt. No. 69-17.

Carney also argues in her opposition memo of law that the "biased, hostile hearing environment and victim-blaming rationale in the written decision exacerbated her psychological trauma and caused reputational damage." Dkt. No. 80, at p. 22. Again, Carney's Complaint does not state that the hearing environment or the written decision "exacerbated her psychological trauma" or that it caused any reputational damage whatsoever. Dkt. No. 69, at ¶¶86-99; 124-129. Carney's opposition does not include an affidavit or declaration from Carney, only an attorney affirmation and memorandum of law. Dkt. No. 80. For this reason, additional arguments or facts stated in the opposition that are not included in the Complaint *<u>cannot</u>* be considered as supplementing the Complaint.

Lastly, Carney argues that "RIT's improper disclosure of her allegations to another student directly undermined her privacy, a harm specifically contemplated by FERPA and Education Law § 129-B." Dkt. No. 80, at p.22. Yet again Carney does not allege such harm in her Complaint. See Dkt. No. 69. Instead, she raises this for the first time in her opposition memo of law. Dkt. No.80. Further, Carney has failed to plead that she suffered any actual harm as a result of the inadvertent dissemination of the Notice of Allegations to the wrong student.

With respect to her damages, Carney makes statements noting the general availability or recognition of certain damages or harm in support of her claim, but then offers only conclusory assertions that she has suffered such damages. Carney's failure to plead how any of RIT's conduct

proximately caused her any actual harm or damage[6]is fatal to her negligence claim. For each of these reasons Carney's negligence claim must be dismissed.

## IV.    CARNEY HAS NOT SUFFICIENTLY PLED A CLAIM FOR BREACH OF CONTRACT.

Carney asserts that RIT "fundamentally mischaracterize[d]" the legal standard applicable to her breach of contract claims. This is simply not true. RIT does not dispute that to establish a breach of contract claim under New York State law, there must be existence of a contract, plaintiff's performance, defendant's breach, and resulting damages. Notwithstanding, it is also well established that in the context of a student alleging a breach of contract by a university vis-à-vis the student's enrollment with the institution, "an implied contract is formed when a university accepts a student for enrollment," and "the terms of the implied contract are 'contained in the university's bulletins, circulars, and regulations made available to the student.'" Papelino v. Albany College of Pharm. of Union Univ., 633 F.3d 81, 93-94 (2d Cir. 2011). Papelino is the correct standard governing breach of contract claims in the context of a student and university. Carney does not disagree. Dkt. No. 80, at p.8.

### A.    Carney failed to identify specific contractual provisions that RIT breached.

Carney argues that she has identified specific contractual provisions upon which to base her breach of contract claim. Carney's assertions are nevertheless insufficient to overcome RIT's motion to dismiss, briefly summarized as follows:

- Carney identifies definitions of "consent," "preponderance of evidence," and "relevancy" in RIT's Title IX policy and asserts that RIT "refused to adjudicate her complaint using [these] definitions." Dkt. No. 69, at ¶ 163. However, the Complaint is devoid of any factual assertions to support *how* RIT allegedly did not properly apply the definitions of consent, preponderance of the evidence, and/or relevancy. Distinguishable from the cases Carney cites in support, Carney has not offered *any* plausible factual

---

[6] Notably, in dismissing Carney's Article 78 claim premised upon the exact same facts, the Court found that Carney had not actually suffered any harm or injury as a result of the alleged "mishandling" of the underlying Title IX investigation, hearing, decision, or appeal. See, Dkt. 80-4, p. 4-5.

basis to support that RIT misapplied or simply did not apply, each of the definitions set forth above.

- Carney asserts that RIT breached its contractual promise to her to protect her privacy as per the Title IX Policy § VII(O) and the Bill of Rights. Dkt. No. 69, at¶166. This is insufficient to support her breach of contract claim because the policy does not create a contractual obligation, promise, or guarantee to protect Carney's privacy, as the statements regarding privacy only provides for "reasonable efforts and measures" to protect her privacy during the investigation, and a statement of rights required by law; neither arise to a contractual obligation or promise upon which a breach of contract claim can be predicated. Dkt. No. 69-3, at p.4; Dkt. No. 69-6.

- Carney also refers to the Title IX Policy § IX(D)(1) and purports that the policy "promises" to provide appropriate training to individuals involved in the adjudication process. Dkt. No. 69, at ¶169-170. Carney does not allege *how* RIT breached this, as she only argues that given the outcome of the hearing and the written determination, she "can only presume" that the hearing officers must not have been trained in accordance with certain federal laws. Dkt. No. 69, at ¶ 129. This is insufficient and speculative. Distinguishable from the cases Carney cites on this point, Carney has not offered a plausible factual basis to support this allegation.

- Carney asserts that RIT violated the Title IX Policy § (D)(6)(b) when the hearing board based its decision on improper stereotypes and drew inferences about the determination of responsibility "based solely on [her] refusal to answer." RIT's Title IX Policy affords the hearing officers discretion regarding credibility assessments. Dkt. No. 69-1, at p. 13. Moreover, this assertion is refuted by the Written Determination attached to the Complaint. Dkt. No. 69-14.

- Carney identifies Title IX Policy § IX(E)(6)(C), which provides a timeline to deliver the written outcome letter within 10 days of completion of the hearing. Carney does not explain how this caused her any actual harm. While she claims that the delayed delivery affected RIT's decision to deny her appeal, that is refuted by the appeal determination letter from Dr. Boulais. Dkt. No. 69-17. Timing of the appeal and Koszkul's graduation from RIT was not a basis for denial of Carney's appeal. See, Dkt. No. 69-17. Therefore, RIT's brief delay in delivering the outcome letter is not material and did not actually result in any harm to Carney.

- Carney identifies the Title IX Policy § X, (A) and (E), regarding the criteria upon which appeals may be heard. Carney does not offer any specific factual basis for what aspect of that policy RIT allegedly breached, only a conclusory assertion that RIT denied her appeal in violation of this part of the policy. This is also refuted by RIT's written appeal determination. See, Dkt. No. 69-17.

- Carney asserts that RIT breached its contract when it created a notice of outcome that did not follow the "promises" in Title IX Policy § IX (E)(6)(c). This is clearly and unequivocally contradicted by the written outcome document itself. Dkt. No. 69-14.

All of the Carney's assertions are legally deficient because Carney has either failed to identify a specific contractual obligation that exists, or she has failed to offer factual allegations that RIT breached said contractual obligation which resulted in harm/damages. For these reasons, Carney's breach of contract claim must be dismissed.

B.     RIT substantially complied with its policies.

Carney argues that RIT cannot avail itself of the "substantial compliance" doctrine on a motion to dismiss. Carney ignores that at least one court in this Circuit *has* granted a defendant's motion to dismiss in similar circumstances. See, Faiaz, 64 F. Supp. 3d at 358-360. "When a disciplinary dispute arises between the student and the university, judicial review of the institution's actions is limited to whether the [institution] acted arbitrarily or whether it substantially complied with its own rules and regulations." Id. at 358. As the Title IX investigation process is a disciplinary process, it is appropriate for the Court to apply this doctrine here, too. Id.

C.     Carney has not sufficiently alleged harm or damages resulting from any breach of contract.

Carney has also not sufficiently pled that she suffered any actual harm or damage from a breach of contract. Carney argues that RIT's breaches caused her to be sued for defamation by Koszkul. However, Carney's alleged harm is entirely independent of RIT's actions in the underlying Title IX investigation. Regardless of RIT's actions, Koszkul could have still brought this underlying defamation lawsuit based on Carney's allegation that Koszkul assaulted her.

To the extent that Carney asserts new factual allegations in her opposition memo of law, they are improperly asserted for the first time here by Carney's attorney and without any proper evidentiary support from Carney such as providing the court with a sworn Affidavit. As such, any and all new allegations of harm or damage cannot be considered by the Court.

13

## V.    RIT PROPERLY ARGUES CARNEY'S CLAIMS ARE BARRED BY RES JUDICATA

In RIT's primary memorandum of law in support of its motion to dismiss Carney's Complaint, RIT argues "where a plaintiff in a later action brings a claim for damages that could have been presented in a prior CPLR article 78 proceeding against the same party, based upon the same harm and arising out of the same or related facts, the claim is barred by res judicata." Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 347-348 (1999). Further, where a plaintiff files an Article 78 action, which is unsuccessful, and then files a breach of contract claim in a subsequent lawsuit against the same party, which arises "out of the same or related facts", it should be barred by res judicata. Id. (citing) Pauk v. Board of Trustees, 111 A.D.2d 17, 20 (1st Dept. 1985). See also, Dobkin v. New York Univ., 278 A.D. 24 (1st Dept. 2000).

In response to this argument, Carney has cited to a line of cases, including Whitfield v. City of New York, 96 F.4th 504 (2d Cir. 2024) and Schachtler Stone Prods., LLC v. Town of Marshall, 2024 U.S.Dist. LEXIS 158124 (N.D.N.Y. 2024), which found that res judicata did not apply to preclude claims from a prior Article 78 proceeding. However, each of these cases relate to a specific exception to res judicata, where the Plaintiff is asserting claims pursuant to §1983 or civil rights violations *because those claims could not be fully adjudicated in an Article 78 action*. For example, in Schachtler Stone Prods., LLC, the Court noted that the required elements of res judicata were not at issue, instead the question was whether there was an exception to res judicata because "Article 78 proceedings in New York do not preclude subsequent §1983 actions." 2024 U.S.Dist. LEXIS 158124 at *19 (noting "binding precedent requires that '[a] New York plaintiff is not barred from seeking damages in federal court, on civil rights claims by reason of a prior judgment on the same underlying facts in an Article 78 proceeding requesting injunctive or affirmative relief.") (quoting Davis v. Halpern, 813 F.2d 37, 39 (2d Cir. 1987). See also,

14

Whitfield, 96 F.4th at 524 (noting that "a judgment in a 'pure' Article 78 proceeding does preclude, under the doctrine of res judicata, a later section 1983 damages claim based on the same set of facts."); Davidson v. Capuano, 792 F.2d 275 (finding that res judicata did not apply to a plaintiff's claim pursuant to §1983 where the same facts were alleged in a prior Article 78 proceeding, because the Article 78 proceeding could not have provided the plaintiff the same relief they were entitled to pursuant to §1983); Burgos v. Hopkins, 14 F.3d 787 (2d Cir. 1994) (same); Leather v. Ten Eyck, 180 F.3d 420 (2d Cir. 1999) (same).

    A.  Carney is not entitled to punitive damages

In the present case Carney has not alleged a claim pursuant to §1983, which would entitle her different relief than the relief that she could have requested in her prior Article 78 action. Carney has alleged in the current lawsuit she is entitled to "punitive damages as well as attorney's fees for RIT's breach of contract and negligence."  Dkt. No. 80 at p. 9 of 34.  However, those damages are not available to her under New York law.  In order to seek punitive damages in a breach of contract claim, "a plaintiff must establish that the defendant's conduct: (1) is actionable as an independent tort; (2) was sufficiently egregious; and (3) was directly not only against the plaintiff, but was part of a pattern of behavior aimed at the public generally."  McCord v. Gov't Emps. Ins. Co., 2025 U.S.Dist LEXIS 45965 (Feb. 6, 2025) at *11 (quoting Leviton Mfg. Co. v. Reeve, 942 F. Supp.2d 244, 270 (E.D.N.Y. 20313), amended (Mar. 23, 2013), (citing Rocanova v. Equitable Life Assurance Soc'y of the United States, 83 N.Y.2d 603 (1994).  The purpose of allowing punitive damages in a breach of contract action is when "the breach also involved a particularly egregious fraud that 'was aimed at the public generally.'"  Id. (quoting TVT Recs. Island Def Jam Music Grp., 412 F.3d 82, 94 (2d Cir. 2005).  In the present case, Carney has failed to allege the elements above, and specifically has failed to allege that RIT's actions were "part of

a pattern of behavior aimed at the public generally." McCord, 2025 U.S.Dist LEXIS 45965 at *11. For that reason alone, Carney does not have a claim for punitive damages pursuant to her contract claim.

The only other claim that Carney alleges supports her claim for punitive damages is her negligence claim against RIT. However, "punitive damages generally are not available in cases involving ordinary negligence, such damages may nevertheless be awarded in actions . . . if negligence amounts to flagrant misconduct." Fordham-Coleman v. National Fuel Gas Distrib. Corp., 42 A.D.3d 106 (4th Dep't 2007) (finding that negligence leading to the plaintiff freezing to death in her own home *might* constitute "willful or wanton negligence or recklessness" for the purposes of awarding punitive damages). See also, Home Ins. Co. v. American Home Prods. Corp., 75 N.Y.2d 196, 203-204 (1990) (noting punitive damages "are intended as punishment for gross misbehavior for the good of the public and have been referred to as a sort of hybrid between a display of ethical indignation and the imposition of a criminal fine . . .").  In the present case, Carney has alleged an ordinary negligence claim, which does not rise to the level of "flagrant misconduct" or "recklessness" and therefore, she has not adequately pled a claim for punitive damages in her Amended Complaint.

    B.  Carney is not entitled to attorney's fees

Carney has also made the declaration that the damages in the current lawsuit differ from those of the Article 78 action because she is entitled to attorney's fees in this lawsuit.  However, there is no merit to this claim.  Commonly referred to as the American Rule, each party to litigation must pay its own attorney's fees and costs. Alyeska Pipeline Service Co. v. Wilderness Soc., 421 U.S. 240, 247 (1975). Pursuant to this rule it is generally understood that "damages" do not include attorney's fees and costs. Summit Valley Industries, Inc. v. United Brotherhood of

16

Carpenters and Joiners, 456 U.S. 717, 722-723 (1982). Attorney's fees may only be recovered under certain circumstances including "cases in which a statute or enforceable contract provides for an award of attorney's fees . . ." Raff v. Maggio, 743 F. Supp. 147, 149 (E.D.N.Y. 1990); F.D. Rich Co., Inc. v. United States, 417 U.S. 116, 129-130 (1974).

Carney has alleged that she has a right to attorney's fees pursuant to her negligence and breach of contract claims.  However, as indicated above, a common law claim for negligence, which does not stem from a statute, or contract does not serve as a basis to recover attorney fees. Raff, 143 F. Supp.2d at 149.  With regard to her breach of contract claim, she has failed to point to a provision in any contract she signed with RIT, which provides her with the right to collect attorney's fees. For a breach of contract claim, "the obligation to pay attorneys' fees must be unmistakably clear in the language of the contract." Id.; see also Hooper Assocs. v. AGS Computers, Inc., 74 N.Y.2d 487, 492 (1989).  Carney cannot identify a contractual provision that entitles her to recover attorney's fees against RIT, and therefore, she cannot differentiate the relief sought in her current claim from the relief she could seek pursuant to the Article 78 action.[7]

## VI.   RIT PROPERLY ARGUES CARNEY'S CLAIMS ARE BARRED BY COLLATERAL ESTOPPEL

As previously argued, collateral estoppel or issue preclusion "prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action." Hunold v. City of New York, 2024 N.Y. Misc. LEXIS 6610, *8, 2024 NY Slip Op 51241(U) (Sup. Ct. NY County Sept. 10, 2024).  Issue preclusion may apply to preclude a finding

---

[7]  Carney has cited to other case law in support of her argument that her current claims are not barred by res judicata because she is seeking remedies that she was not entitled to in the Article 78 action (punitive damages and attorney's fees).  However, as described above, because Carney is not entitled to those damages in the present lawsuit, those arguments, and cases that she cited are not actually applicable.  See Doe v. Columbia, 551 F. Supp.3d 433, 461 (S.D.N.Y. 2021); Harriram v. Fera, 2023 U.S.Dist. LEXIS 114687, at *11 (S.D.N.Y. 2023); Vega v. State Univ. Of N.Y. Bd. Of Trs., 67 F. Supp.2d 324, 333-335 (S.D.N.Y. 1999); Karamoko v. New York City Housing Authority, 170 F.Supp.2d 372, 375-378 (S.D.N.Y. 2001).

of either an "issue of law or fact." Bristol v. Town of Camden, 2024 U.S. Dist. LEXIS 94048, *7 (N.D.N.Y. May 28, 2024). In reviewing a prior court decision, the court must take "a functional approach . . . and it should not be applied rigidly. Id. "The prior decision or issue need not have been explicit [for preclusion to apply] if by necessary implication it is contained in that which has been explicitly decided." Id. See also, Norris v. Grosvenor Marketing Ltd., 803 F.2d 1281, 1285 (2d Cir. 1986).

In opposition to RIT's motion, Carney has argued that none of the claims that she pursued in the Article 78 action were "actually or necessarily" decided by the Judge in that action. Dkt. No. 80 at p. 12 of 34. Further, Carney denies that Judge Nasca in his Article 78 decision concluded that Carney "was unable to establish injury in fact in support of any of her claims." Id. Instead, she argues that the Court held that "the injuries alleged by Carney were speculative and fell outside of the zone of interests to be protected by Title IX." Id. Carney cited Regis-Dumeus v. Great Lakes Kraut Co., LLC, 462 F. Supp. 3d 292, 299 (W.D.N.Y. 2020) to support her position that a denial of a claim based on standing is not a denial of the claim on the merits. However, in that case Plaintiff's failure of standing was because the plaintiff had not been appointed as the administrator for the decedent's estate (and the claim was for a wrongful death action). Clearly that scenario did not address the merits on the case. With regard to the Article 78 in the present case, however, Judge Nasca actually concluded that, based on the same facts Carney alleged in the present action, she had failed to establish that RIT's actions resulted in injury-in-fact to Carney. His decision stated, in part:

> [a]lthough Petitioner may have suffered various injuries during or as a result of the alleged assaults, she has failed to demonstrate that she personally suffered some actual or threatened injury as a result of [RIT's] determination and denial of her appeal . . . Petitioner does not allege that she was subjected to any disciplinary action or adversely affected by respondent's determination . . . Furthermore, petitioner's assertion that Koszkul filed a Federal Court libel lawsuit against her as

18

> a direct result of respondent's actions, fails to demonstrate injury-in-fact. Petitioner avers that respondent's determination formed the foundation of Koszkul's Federal Court complaint. However, petitioner's own argument is premised upon the notion that had respondent "followed its legal obligations," respondent may have arrived at a different determination and Koszkul may have not sued her, and that by vacating the determination her potential liability *may* be lessened.[8] Petitioner has not plead a direct and harmful effect on her as a result of respondent's determination.

See Dkt. No. 80-4 at p. 4-5. Because, as indicated above, collateral estoppel may apply to an "issue of law or fact," this Court may determine that Carney's claims are collaterally estopped based on Judge Nasca's decision in the Article 78 Action.[9] For each of these reasons, Carney's claims in the present litigation are barred by collateral estoppel.

---

[8] Plaintiff Koszkul specifically stated in his memorandum of law in opposition to Carney's motion to dismiss in a section entitled "Defendant's Article 78 Petition is Irrelevant Here" that even if Carney's Article 78 Action was successful, it would have no impact on his decision to continue to pursue his defamation claims against her in the present lawsuit. See Dkt. No. 21 at p. 16-17 of 20.

[9] Carney cited to numerous other cases in support of her argument, all of which are distinguishable from the present case. See Kaufman v. Eli Lily & Co., 65 N.Y.2d 449 (1985) (finding collateral estoppel applied to some but not all claims brought by plaintiffs by a drug manufacturer in a products liability action); Morabito v. New York, 2018 U.S. Dist. LEXIS 101502, at *13-14 (W.D.N.Y. 2018) (Carney correctly points out this case found that collateral estoppel barred a claim due to lack of standing, but this case does not provide any insight regarding how Carney's claims of breach of contract, negligence, indemnification or contribution should be treated); Vargas v. City of NY, 377 F.3d 200, 205-206 (2d Cir. 2004) (court denied collateral estoppel for discrimination claim where the Plaintiff did not raise the issue of discrimination in the prior Article 78 action); McGuinn v. Smith, 523 F. App'x 764, 766 (2d Cir. 2013) (court found collateral estoppel did not apply to §1983 action where allegations in prior action were different from those in the present action); Quartararo v. Catterson, 917 F. Supp. 919 (E.D.N.Y. 1996) (court found collateral estopped did not apply to §1983 claim).

## **CONCLUSION**

For each of the foregoing reasons, RIT respectfully requests that the Court grant RIT's

motion to dismiss the Amended Third-party Complaint, in its entirety, along with whatever further

relief the Court deems just and proper.

Dated: May 2, 2025

> BOND, SCHOENECK & KING, PLLC
> *Attorneys for Rochester Institute of Technology*
>
> By:  *Laura Myers*
>
> Laura A. Myers, Esq.
> Stephanie Hoppe Fedorka, Esq.
> 350 Linden Oaks, Third Floor
> Rochester, New York 14526
> Telephone: (585) 362-4700
> Email:  lmyers@bsk.com
>            sfedorka@bsk.com