UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARCEL KOSZKUL,

                Plaintiff,

    v.

MICHELLE CARNEY,

                Defendant.

**DECISION AND ORDER**

24-CV-06480-MJP-EAW

---

MICHELLE CARNEY,

                Third-party Plaintiff,

    v.

ROCHESTER INSTITUTE OF TECHNOLOGY,

                Third-party Defendant.

---

## INTRODUCTION

Plaintiff Marcel Koszkul ("Koszkul") commenced a defamation action against defendant Michelle Carney ("Carney") on July 26, 2023, filing an amended complaint on October 11, 2023, alleging that Carney presented false accusations that he sexually assaulted and raped her to the Rochester Institute of Technology ("RIT"), which Koszkul and Carney attended. (Compl., July 16, 2023, ECF No. 1.) On December 17, 2024, Carney commenced an action against third-party defendant RIT, asserting claims for breach of contract, negligence, indemnification, and contribution. (Third-Party Compl., Dec. 17, 2024, ECF No. 42.)

Presently before the Court is RIT's motion to dismiss defendant/third-party plaintiff Carney's amended third-party complaint with prejudice pursuant to Fed. R. Civ. P. 16(b)(6) for failure to state a cause of action. (Motion to Dismiss, Apr. 4, 2025, ECF No. 77.)

The parties consented to magistrate judge jurisdiction for disposition of the present motion, which Chief Judge Wolford "so ordered" on November 7, 2025. (Notice, Consent, and Reference of a Dispositive Motion to a Magistrate Judge, ECF No. 102.)

For the reasons set forth below, the Court **GRANTS IN PART and DENIES IN PART** RIT's motion to the dismiss.

## FACTUAL BACKGROUND

The following facts are taken from Plaintiff's amended complaint and, as is required at this stage of the proceedings, are presumed to be true.

### I.   RIT's Obligations to Manage Complaints of Sexual Misconduct

RIT is a private post-secondary school that meets the definition of an educational institution under 20 U.S.C. § 1681(c) and a postsecondary institution under 34 C.F.R. § 106.30(b). (Am. Third-Party Compl. at ¶¶ 17–18, Mar. 7, 2025, ECF No. 69.) RIT is obligated by state and federal laws, including the Violence Against Women Act's ("VAWA") amendments to the Clery Act and New York Education Law article 129-B ("Article 129-B"), to prevent and respond to allegations of sexual harassment. (*Id.* ¶¶ 19, 21–22.) As a recipient of federal funding, RIT is subject to Title IX of the Education Amendments of 1972 ("Title IX") and its implementing

regulations ("Title IX Regulations"). (*Id.* ¶ 20.) In accordance with those obligations, RIT has established a Policy on Title IX Sexual Harassment for Faculty, Staff, and Students ("Title IX Policy"). (*Id.* ¶ 23.)

VAWA, Article 129-B, and Title IX Regulations impose requirements on RIT to provide decisionmakers with training on how to adjudicate allegations of sexual harassment. (*Id.* ¶¶ 24–27.) VAWA mandates that RIT's procedures for institutional disciplinary action in cases of alleged sexual assault be conducted by officials who receive annual training on issues related to dating violence, domestic violence, sexual assault, and stalking, and on how to conduct an investigation and hearing process that protects the safety of victims and promotes accountability. (*Id.* ¶ 25.) Article 129-B gives all students the right to have complaints investigated and adjudicated by individuals who receive annual training in conducting investigations of sexual violence, the effects of trauma, and impartiality. (*Id.* ¶ 26.) Title IX Regulations require Title IX coordinators, investigators, decision-makers, and any person who facilitates an informal resolution process to receive training on: the definition of sexual harassment; how to conduct an investigation and grievance processes, including hearings, appeals, and informal resolution processes; how to serve impartially, including by avoiding prejudgment on the facts at issue, conflicts of interest, and bias; ensuring materials used in training promote impartial investigations and adjudications of formal complaints of sexual harassment and do not rely on sex stereotypes; and making training materials publicly available on the institution's website. (*Id.* ¶ 27.)

RIT's Title IX Policy accounts for those requirements; it mandates that RIT's training materials must be posted on its Title IX website (*id.* ¶ 28; Title IX Policy at 17, ECF No. 69-1), that all persons involved with the investigation or hearing of a Title IX complaint receive training on the school's Title IX Policy, implicit bias, and trauma-informed investigation techniques (Am. Third-Party Compl. ¶ 31; Title IX Policy at 11); that live hearings must be presided by hearing officers who are trained on its Title IX Policy, Title IX Regulations, trauma-informed responses, and relevant evidentiary standards (Am. Third-Party Compl. ¶ 32; Title IX Policy at 13); and that RIT commits to training individuals involved in investigations, hearings, or appeals under the Title IX Policy on Title IX definitions, the scope of RIT educational programs and activities, trauma informed responses, and how to serve impartially, including avoiding prejudgment of facts, conflicts of interest, and bias (Am. Third-Party Compl. ¶ 22; Title IX Policy at 17).

Pursuant to its obligations under Title IX, RIT is also required to take "reasonable steps to protect the privacy of the parties and witnesses during the pendency of a recipient's grievance procedures." (34 C.F.R. § 106.45(b)(5); Am. Third-Party Compl. ¶ 41.) RIT's Title IX Policy defines "privacy" as "information related to an incident or report that will be shared only with a limited circle of individuals who 'need to know' in order to assist in the active review, investigation, or resolution of the report. While not bound by confidentiality, individuals with whom a report is shared will be discreet and respect the privacy of all individuals involved in the process." (Am. Third-Party Compl. ¶ 40; Title IX Policy at 5.)

- 4 -

RIT's Title IX Policy dictates the procedure that the hearing board must follow in issuing a decision. (Am. Third-Party Compl. ¶ 42.)  It states that at the conclusion of a hearing held in response to a formal complaint of Title IX sexual harassment, RIT will provide to the parties a written determination of the hearing board's decision within 10 days. (Am. Third-Party Compl. ¶ 42; Title IX Policy at 14.) The written determination must include findings of fact supporting the outcome, an application of the facts to RIT's code of conduct, and a statement of, and rationale for, the result as to each allegation, including a determination regarding responsibility. (Am. Third-Party Compl. ¶ 42; Title IX Policy at 14.)

Article 129-B addresses a student's right to appeal a Title IX decision, mandating that "Every institution shall ensure that every student be afforded . . . access to at least one level of appeal of a determination before a panel, which may include one or more students, that is fair and impartial and does not include individuals with a conflict of interest." (Am. Third-Party Compl. ¶ 150; N.Y. EDUC. LAW § 6444 (5)(b)(iii) (McKinney 2015).)  RIT's Title IX Policy states that "An appeals officer will review the appeal request and make a threshold determination regarding the timeliness of the appeal and whether the appeal is based on the [sic] one of the grounds listed in this Policy. The party requesting an appeal must show that the grounds for an appeal request have been met." (Am. Third-Party Compl. ¶ 149; Title IX Policy at 16.)

## II.   The Title IX Complaint, Investigation, Hearing, and Decision

On July 29, 2022, Carney reported to RIT that Koszkul sexually assaulted her. (Am. Third-Party Compl. ¶ 49.)  On August 22, 2022, Carney filed a formal complaint of Title IX sexual harassment with RIT's Title IX coordinator, which stated that at the time of the incidents, Carney was too intoxicated to consent to sexual activity. (Am. Third-Party Compl. ¶¶ 50, 51; Title IX Formal Compl., ECF No. 69-4.) Later that day, Carney received a Notice of Investigation and Allegations that contained statements not reflected in her formal complaint. (Am. Third-Party Compl. ¶¶ 54–55; Notice of Investigation and Allegations, ECF No. 69-3.) On August 31, 2022, Carney received an "Ammended [sic] Notie [sic] of Investigation and Allegations," which stated that it "reflected the charges of all three alleged incidents given the varying locations" and similarly contained statements not reflected in Carney's formal complaint. (Am. Third-Party Compl. ¶¶ 56, 58; Am. Notice of Investigation and Allegations, ECF No. 69-5.) Sometime later, Carney learned that RIT had mistakenly sent the amended notice to a member of Carney's sorority, who informed Carney that she had received and read the notice. (Am. Third-Party Compl. ¶¶ 62–63.)  Only after Carney informed RIT staff that she was aware that her privacy had been violated did RIT acknowledge that it sent the notice to an unrelated third party by mistake.  (Am. Third-Party Compl. ¶¶ 65, 67; Letter from S. DeRooy to M. Carney, dated Oct. 10, 2022, ECF No. 69-8.)

After Koszkul declined Carney's attempts to informally resolve her complaint, RIT began its investigation. (Am. Third-Party Compl. ¶¶ 68–69.) On February 17,

2023, the Title IX Office shared a completed investigation report to RIT's Center for Student Conduct and Conflict Resolution ("CSCCR"). (Am. Third-Party Compl. ¶ 70.) On March 21, 2023, the CSCCR notified Carney that it would hold a hearing to determine whether Koszkul violated RIT's policies during three encounters with her, one occurring on August 28, 2021, one occurring sometime between September 4 and September 11, 2021, and another occurring in early to mid-October 2021. (Am. Third-Party Compl. ¶¶ 72–74; Letter from J. Mortimer to M. Carney, Mar. 21, 2023, ECF No. 69-12.)

The hearing was held on April 19, 2023. (Am. Third-Party Compl. ¶ 83.) For several reasons, the manner in which the hearing was conducted created a stressful environment for Carney, including: the failure to offer Carney a privacy screen to prevent her from viewing Koszkul, despite assurances in the March 21 letter that she could utilize one (*id.* ¶ 87; Letter from J. Mortimer to M. Carney, ECF No. 69-12); requiring Carney to be seated away from her advisor and forcing her to look directly at Koszkul throughout the hearing (Am. Third-Party Compl. ¶ 88); holding the hearing from 3:15 p.m. until 10:30 p.m., which prevented a critical witness from being available for the entirety of the hearing (*id.* ¶¶ 89–80); not permitting a dinner break or allowing the parties to obtain water (*id.* ¶¶ 91–92); refusing to allow Carney to speak with her advisor for more than two minutes at a time (*id.* ¶ 93); permitting Koszkul's advisor to subject Carney to repeated, irrelevant questioning (*id.* ¶ 94); and forcing Carney to relay her report of the incidents "over and over" (*id.* ¶ 95). Throughout the hearing, the attorney member of the hearing board and RIT's Title

IX Coordinator seemed distracted and not fully engaged, as they were repeatedly looking at their phones and Apple® watches. (*Id.* ¶ 98.)

On May 5, 2023, more than 15 days after the hearing concluded, Carney received a Written Determination Letter ("WDL") from the hearing board finding that Koszkul had not engaged in any violations of RIT policies. (Am. Third-Party Compl. ¶¶ 99–101; WDL, ECF No. 69-14.) The WDL reflected that the hearing board evaluated nine total encounters between Carney and Koszkul, not three. (Am. Third-Party Compl. ¶ 104.)  It did not include findings of fact, merely describing the alleged encounters and stating that Carney was "not credible." (*Id.* ¶¶ 105-06.)  It also did not indicate that the hearing board consulted RIT's policies and code of conduct in reaching its conclusion. (*Id.* ¶¶ 107–09.) Furthermore, the WDL did not include a statement of, and rationale for, the result as to each allegation. (*Id.* ¶ 110.) It was also logically inconsistent, as the hearing board often relied on Carney's statements in making its determination while simultaneously saying that Carney was not credible. (*Id.* ¶¶ 111–18.) In addition, the WDL evidenced that the hearing board inferred responsibility from Carney declining to answer questions. (*Id.* ¶ 119.) Similarly, it demonstrated that the hearing board failed to consider inculpatory evidence, ignored relevant evidence, did not adhere to the proper definition of consent, and utilized gender stereotypes in its decision-making. (*Id.* ¶ 120.) The WDL also contained victim-blaming language. (*Id.* ¶¶ 122–28.) In totality, the WDL reflected that, upon information and belief, members of the hearing board did not undergo regulated training, especially since, throughout the relevant time period, the

training materials posted on RIT's website were dated "2020," which was prior to any of the hearing officers' employment with RIT. (*Id.* ¶¶ 30, 34, 129; RIT's Title IX training materials, ECF No. 69-2.)

Carney was instructed that she could file an appeal no later than May 15, 2023. (Am. Third-Party Compl. ¶ 135.)  Upon information and belief, Koszkul graduated from RIT on May 13, 2023, ending his relationship with the university.  (*Id.* ¶¶ 136-38.) Carney filed a timely appeal, contending that a procedural irregularity occurred that affected the outcome of the matter. (*Id.* ¶¶ 140–42; Appeal Request, ECF No. 69-16.) She averred that the prolonged investigation followed by an additional two-month waiting period before the hearing occurred was unreasonable considering that RIT knew that Koszkul was scheduled to graduate from RIT in May 2023. (Am. Third-Party Compl. ¶¶ 143–44.)  She also objected to the lack of attention of members of the hearing board during her hearing, and to the WDL's inclusion that it found her not credible because she declined to answer a question. (*Id.* ¶¶ 145–47.)  On May 22, 2023, RIT made a "threshold decision" in which it denied presenting Carney's appeal to its Title IX Appeals Board. (*Id.* ¶ 148; Letter from N. Boulais, dated May 22, 2023, ECF No. 69-17.)

## **PROCEDURAL HISTORY**

Koszkul commenced the underlying action on July 26, 2023, in the Southern District of New York. (Compl., ECF No. 1.) Koszkul filed an amended complaint on October 11, 2023, in which he alleges claims for defamation against Carney based upon Carney's alleged repeated false allegations that Koszkul sexually assaulted and

raped her. (Am. Compl. ¶ 1, ECF No. 14.) On August 2, 2024, the case was transferred to the Western District of New York and assigned to Chief Judge Elizabeth A. Wolford. (ECF No. 27.) The parties consented to magistrate judge jurisdiction for resolution of the present motion. (ECF No. 102.)

In response to Koszkul's filing the first-party action, on September 22, 2023, Carney commenced an Article 78 proceeding in New York State Supreme Court, Monroe County, against third-party defendant RIT, seeking judicial review of RIT's determination through its Title IX administrative hearing board process regarding Carney's reporting of an alleged sexual assault. (Myer's Decl. ¶¶ 3 & 5 & Ex. C, Apr. 4, 2025, ECF No. 77-2.) The court granted RIT's motion to dismiss the Article 78 proceeding finding that Carney "failed to demonstrate that she suffered, or will suffer an injury-in-fact which would confer standing upon her to bring [the] Article 78 petition." (*Id.* ¶ 3 & Ex. A.)

Carney then commenced a third-party action against RIT on December 17, 2024. (Third-Party Compl., Dec. 17, 2024, ECF No. 42.) Carney filed an amended third-party complaint on March 7, 2025. (Am. Third-Party Compl., ECF No. 69.) The amended complaint alleges that "RIT failed to adjudicate her allegations in a manner consistent with its obligations pursuant to state and federal laws, and its own policies" and asserts four causes of action for (1) breach of contract, (2) common law indemnification, (3) common law contribution, and (4) negligence. (*Id.* ¶¶ 4, 153–199.)

The instant motion to dismiss the amended complaint was filed on April 4, 2025. (Notice of Motion, ECF No. 77.)   Carney's response was filed on April 18, 2025,

(Carney's Mem. of Law, ECF No. 80), and RIT's reply was filed on May 2, 2025 (RIT's Reply Mem. of Law, ECF No. 85.)[1] The Court heard oral argument on the motion on December 4, 2025. (Minute Entry, ECF No. 103.)

## DISCUSSION

### I.   Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

---

[1]  On May 7, 2025, Carney filed a motion to file a sur-reply and simultaneously filed the proposed sur-reply. (ECF Nos. 86 & 87.) The Court denied Carney's motion, (Text Order, Jul. 3, 2025, ECF No. 92) and, therefore, has not considered the sur-reply in connection with this motion.

entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II.    Collateral Estoppel and *Res judicata*

Preliminarily, RIT contends that Carney's action is barred by issue and claim preclusion.  In support of its contentions, RIT points to the Article 78 proceeding that Carney commenced against RIT, in which she alleged four causes of action: (1) RIT failed to perform a duty enjoined by law; (2) RIT's Title IX determination was made in violation of lawful procedure; (3) RIT's Title IX determination was arbitrary and capricious; and (4) RIT's Title IX determination was not supported by substantial evidence. (Myers Decl. ¶ 5 & Ex. C, ECF No. 77-2.) In a decision, order, and judgment entered on October 31, 2024, in Supreme Court, Monroe County, Judge Nasca dismissed Carney's petition for lack of standing. (Myers Decl. ¶ 3 & Ex. A, ECF No. 77-2.)  The court determined that Carney failed to demonstrate that she had suffered an injury-in-fact as a result of the Title IX decision, since the sole remedy that Carney sought was to have the determination vacated. (Myers Decl. Ex. A at 8[2].)  Because Koszkul had graduated at the time that Carney filed the Article 78 petition, he was

---

[2] Ms. Myers' declaration and the three exhibits referenced therein were filed as one document. Accordingly, the page references are to the page number assigned by CM/ECF when the documents were filed.

no longer subject to RIT's control and therefore, such relief would not have had an effect on Carney or Koszkul. (*Id.* at 8–9.) Furthermore, the court found that Carney's "speculated injury" stemming from Koszkul's commencement of a libel action against her fell outside the zone of interests to be protected by Title IX, which was solely focused on equal access to education. (*Id.* at 9-10.)

RIT has submitted the Article 78 petition and decision in connection with its motion to dismiss. (Myer's Dec. ¶¶ 3 & 5 & Exs. A & C, 77-2.) Although Carney omitted from her complaint that she appealed the Title IX decision, the Court may consider those items in connection with ruling on RIT's motion to dismiss because they are a matter of public record of which the Court may take judicial notice. *See Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008) ("Although the general rule is that a district court may not look outside the complaint and the documents attached thereto in ruling on a Rule 12(b) motion to dismiss, we have acknowledged that the court may also consider matters of which judicial notice may be taken." (quotations and citation omitted)). Pursuant to Rule 201 of the Federal Rules of Evidence, district courts "may take judicial notice of documents where the documents 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Finn v. Barney*, 471 F. App'x 30, 32 (2d Cir. 2012) (summary order) (quoting Fed. R. Evid. 201(b)(2)). "[C]ourts routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). Further, a

district court may take judicial notice on a motion to dismiss of documents that satisfy the requirements of Rule 201(b)(2) and "b[ear] directly on the question of issue preclusion." *Bristol v. Nassau Cnty.*, 685 F. App'x 26, 28-29 (2d Cir. 2017) (summary order) (affirming decision by district court that the plaintiff's claim for false arrest was precluded by the decision in his state criminal case, where he "raised a probable cause challenge to his arrest and had a full and fair opportunity to litigate the question with the benefit of counsel"); *see also Can v. Goodrich Pump & Engine Control Sys., Inc.*, 711 F. Supp. 2d 241, 246 (D. Conn. 2010) ("On a motion to dismiss under Rule 12(b)(6), judicial notice may be taken of other judicial documents that might provide the basis for issue preclusion."). The Court cannot discern any reason why the Article 78 petition and decision do not meet the requirements of Rule 201, nor has Carney raised any issue relating to the authenticity of those documents or otherwise objected to the Court's consideration of them in connection with RIT's motion to dismiss. Accordingly, the Court finds that it may take notice of the Article 78 petition and decision when resolving the motion to dismiss.

"The preclusive effect of a judgment rendered by a federal court sitting in diversity . . . is determined by the law of the state in which the rendering court sat[.]" *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 66 F.4th 365, 371 (2d Cir. 2023) (citing *Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)); *Hanrahan v. Riverhead Nursing Home*, 592 F.3d 367, 369 (2d Cir. 2010) ("In considering the preclusive effect of a state court judgment on a subsequent federal action, ... [courts] usually consult the preclusion laws of the state in which the judgment was issued.")

- 14 -

(first alteration in original) (quoting *Nestor v. Pratt & Whitney*, 466 F.3d 65, 71 (2d Cir. 2006)); *see also Jenkins v. City of New York*, 478 F.3d 76, 85 (2d Cir. 2007) ("There is no doubt that 'a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984))); *Ferris v. Cuevas*, 118 F.3d 122, 125–26 (2d Cir. 1997) ("[W]e give preclusive effect to a state court judgment whenever the courts of that state would do so ...."). Accordingly, in determining the preclusive effect, if any, of the Article 78 proceeding, the Court will apply New York's preclusion laws.

### Collateral Estoppel

"Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Phoenix Light SF Ltd.*, 66 F.4th at 371 (quoting *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir. 2021)).

On the issue of collateral estoppel, RIT contends that although the causes of action in the instant matter are not identical to those claimed in Carney's Article 78 petition, the underlying factual allegations supporting those claims are nearly identical. (RIT's Mem. of Law at 38, Apr. 4, 2025, ECF No. 77-1.) Furthermore, RIT contends that because the court in the Article 78 proceeding determined that Carney was unable to establish that she had suffered an injury-in-fact for purposes of

- 15 -

standing, that decision precludes Carney's ability to prove damages caused by RIT's Title IX determination. (*Id.* at 38–39.)

Here, Plaintiff's inability to demonstrate any injury-in-fact to support standing in a pure Article 78 proceeding does not convince the Court that it should have a preclusive effect in this case. As counsel for Carney pointed out during oral argument, the Article 78 proceeding did not involve any extensive factual discovery, witnesses, or argument on the damages issue.

Further, as the court noted in its Article 78 decision, the zone of interests in a Title IX action is limited to "equal access to education," which, inter alia, prevented it from concluding that Koszkul's commencement of a libel suit against Carney constituted cognizable harm. Moreover, the court determined that the sole remedy sought by Carney – that RIT's Title IX determination be vacated – would do little to redress any alleged injury, since Koszkul had graduated from RIT and was no longer under the university's jurisdiction. No such limitations exist in this proceeding. Thus, Carney could plausibly allege facts establishing damages for the purposes of her state law claims that would not establish standing in an Article 78 proceeding on a Title IX claim. *See In re Application of Am. Tobacco Co.*, 880 F.2d 1520, 1527 (2d Cir. 1989) ("Issues are considered identical if a different decision in the second suit would necessarily destroy or impair rights or interests established by the first." (quotations and citations omitted)); *see HSBC Bank USA, Nat's Ass. v. Pantel*, 179 A.D.3d 650, 651-52 (N.Y. App. Div. 2020). Accordingly, the court's analysis regarding injury in Carney's Article 78 proceeding is not determinative in this matter and

should not preclude Carney from pursuing state law claims here.   Based on the foregoing, the Court denies RIT's motion to dismiss Carney's claims on the grounds of collateral estoppel.

### *Res judicata*

*Res judicata* applies in New York if: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Kern v. Joyce*, 857 F. App'x 691, 692 (2d Cir. 2021) (summary order) (quoting *Monahan v. N.Y.C. Dept. of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)); *see Beijing Neu Cloud Oriental Sys. Tech. Co., Ltd. v. Int'l Bus. Mach. Corp.*, 110 F.4th 106, 114 (2d Cir. 2024).

In the ordinary case, a dismissal for lack of standing would not operate as adjudication on the merits. *St. Pierre v. Dyer*, 208 F.3d 394, 400 (2d Cir. 2000)**.** However, the decision in this matter under Article 78 of the New York Civil Practice Law and Rules evidently necessitated making a finding of injury-in-fact and because the court conducting that proceeding determined there was no injury-in-fact, RIT argues that this constituted an adjudication on the merits of Carney's damages claim. Once again, however, based on the limited scope of the Article 78 proceeding, the Court cannot conclude that the Article 78 finding of a lack injury-in-fact equates to a determination that Carney can prove no damages in this lawsuit.

RIT further argues that "Carney 'should have' included the claims she currently asserts against RIT (including negligence, indemnification, contribution,

- 17 -

and breach of contract) in the Article 78 Action" and because she did not she "may not assert them now based on res judicata." (RIT's Mem. of Law at 33 n.13.) As RIT argues, there was no adjudication on those issues because Carney did not raise them in the Article 78 proceeding. However, for RIT's argument to be successful this Court would have to speculate that the judge in the Article 78 proceeding would have permitted the additional claims had Carney raised them. *Whitfield v. City of New York*, 96 F.4th 504, 521 (2d Cir. 2024) (providing that when "state courts [are] confronted with an Article 78 petition that seeks relief not strictly available under that Article . . . [t]he court can elect to address, in a single proceeding, claims that are properly brought under Article 78 *and* claims that may not be brought under Article 78.") The Court would have to further speculate that the judge would have ruled on those claims in such a way that it would have a preclusive effect here. The Court is not in the business of speculating. Based on the foregoing, the Court declines to grant preclusive effect on the basis of the Article 78 proceeding for *res judicata* purposes.

## III.   Breach of Contract

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). Here, the Court determines that Carney has adequately pleaded a cause of action for breach of contract.

First, insofar as RIT contests the existence of a contract, (RIT's Mem. of Law at 16–17, ECF No. 77-1; RIT's Reply Mem. of Law at 11, ECF No. 85), "New York courts have long recognized that the relationship between a university and its students is contractual in nature, and that specific promises set forth in a school's bulletins, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract." *Ryanasko v. N.Y. Univ.*, 63 F.4th 186, 197 (2d Cir. 2023) (internal quotations omitted) (first quoting *Prusack v. New York*, 117 A.D.2d 729, 730 (N.Y. App. Div. 1986); and then quoting *Keefe v. N.Y. Law School*, 71 A.D.3d 569, 570 (N.Y. App. Div. 2010)); *see Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011) ("Under New York law, an implied contract is formed when a university accepts a student for enrollment: if the student complies with the terms prescribed by the university and completes the required courses, the university must award him a degree."). Because the existence of an implied contract is a question of fact, the question before the Court is whether a reasonable factfinder could conclude that Carney's plausible allegations demonstrate that an implied contract formed as a result of RIT's issuance of its Title IX Policy. *Ryanasko*, 63 F.4th at 198 (citing *New Windsor Volunteer Ambulance Corps., Inc. v. Meyers*, 442 F.3d 101, 112 (2d Cir. 2006)). As the language within the Title IX Policy contains statements that can reasonably be construed as specific promises, rather than "[g]eneral policy statements and broad and unspecified procedures and guidelines," *Ford v. Rensseleaer Polytechnic Inst.*, 507 F. Supp. 3d 406, 413 (N.D.N.Y. 2020) (quoting *Doe v. Syracuse Univ.*, 440 F. Supp. 3d 158, 175

(N.D.N.Y. 2020)), the Court finds that Carney has plausibly alleged the existence of an implied contract. *Cf. Lloyd v. Alpha Phi Alpha Fraternity*, No. 96-CV-348, 1999 WL 47153, at *10 (N.D.N.Y. Jan. 26, 1999).  For example, the Title IX Policy includes detailed procedures regarding how the Title IX grievance process should occur, including, but not limited to, how a student should file a formal complaint, how the investigation process will proceed, specific hearing procedures, RIT's obligations with respect to writing a responsibility determination, and the steps a student is required to take in order to appeal the determination. (Title IX Policy at 8–16, ECF No. 69-1.) Carney has therefore identified "specifically designated and discrete promises" that could form the basis for an implied contract.  *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016) ("For example, a student who alleged that she did not receive the field work supervision she was promised in her student handbook— including a one-and-a-half to two-hour weekly supervision conference—stated a claim.  In contrast, a general statement of a university's adherence to existing anti-discrimination laws does not create a separate and independent contractual obligation." (internal quotation and citations omitted)).

Second, RIT does not argue that Carney failed to adequately perform her obligations under the Title IX Policy, and Carney alleges in her complaint that she adhered to the requirements of the contract (Am. Third-Party Comp. ¶ 171, ECF No. 69), which the Court must accept as true.

Third, RIT alleges that Carney failed to identify specific contractual provisions that RIT allegedly breached. (RIT's Mem. of Law at 17–27; RIT's Reply Mem. of Law

at 11–13.)  Contrary to that argument, the Court finds that Carney has identified the following alleged breaches of RIT's Title IX Policy: section VII, including abiding by the definitions of "consent," "preponderance of evidence," "relevancy," and "privacy" (Am. Third-Party Comp. ¶¶ 162–68); section IX(D)(1), stating that RIT will train all persons involved with the investigation or hearing on its Title IX Policy, implicit bias, and trauma-informed investigation techniques (*id.* ¶¶ 169–170); section IX(E)(6)(b), dictating that hearing officers shall not base their judgments on stereotypes or draw an inference about responsibility based solely on a party's refusal to answer questions (*id.* ¶¶ 119–28); section IX(E)(6)(C), providing that the hearing officers will issue a written outcome letter within 10 days of the completion of the hearing, that the letter will set forth findings of fact supporting the determination, and that the letter shall articulate a rationale for the determination regarding responsibility (*id.* ¶¶ 110–18, 157, 159); and section X regarding the criteria under which appeal requests could be heard (*id.* ¶¶ 160–61). On this point, the Court also rejects RIT's reliance on substantial compliance at this stage of the proceeding. (RIT's Mem. of Law at 28–31; *see Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) ("[F]act-specific question[s] cannot be resolved on the pleadings." (citation omitted)).

Fourth, the Court is unpersuaded by RIT's contention that Carney has failed to allege damages to support her breach of contract claim. (RIT's Mem. of Law at 31–32; RIT's Reply Mem. of Law at 13.) Carney's complaint alleges that as a result of RIT's breach of its Title IX Policy, she is being sued for defamation, resulting in monetary damages in an amount to be determined at trial. (Am. Third-Party Compl.

¶¶ 6, 176–77).  Considering those allegations, Carney has pleaded damages that are "not merely speculative, possible and imaginary," but "*reasonably certain*" and "as actually follow or may follow from the breach of the contract." *Meng v. New Sch.*, 686 F. Supp. 3d 312, 321 (S.D.N.Y. 2023) (emphasis in original) (quoting *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 110 (2d Cir. 2007)).  It is simply too early in this proceeding to determine whether RIT is correct that "Carney's alleged harm is entirely independent of RIT's actions in the underlying Title IX investigation." (RIT's Reply Mem. of Law at 14.)

The Court therefore finds that Carney's breach of contract claim is sufficiently pleaded to proceed to discovery.  RIT's motion to dismiss is denied on this claim.

## IV.    Negligence

"The elements of a negligence claim under New York law are: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Pasternack v. Lab. Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015) (quotation omitted).  "It is axiomatic that there can be no claim for negligence in the absence of a duty of care, running to the injured party," and "[t]he existence and scope of a duty is an issue of law for the court to determine." *Kennedy-McInnis v. Biomedical Tissue Servs., Ltd.*, 178 F. Supp. 3d 97, 102 (W.D.N.Y. 2016).

Here, RIT argues that Carney's negligence action is duplicative of her breach of contract claim. (RIT's Mem. of Law at 33–34.)  In opposition, Carney contends that her negligence claim is separate and distinct from her breach of contract claim because it is based in RIT's independent legal duties under federal and state law to

protect her privacy and respond to her reports of sex-based harassment in a clear, specific manner. (Carney's Mem. of Law at 20–24, ECF No. 80.)

The parties agree that because it is well-settled that "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated," *Prasad v. Cornell Univ.*, No. 5:15-cv-322, 2016 WL 3212079, at \*23 (N.D.N.Y. Feb. 24, 2016), "[c]ourts routinely dismiss tort claims where they are duplicative of a simultaneously pled breach of contract claim." *Rolph v. Hobart and William Smith Colls.*, 271 F. Supp. 3d 386, 409 (W.D.N.Y. 2017) (quoting *id.*). To overcome that obstacle, Carney avers that it is not the contract that established that RIT owed her a duty of care; rather, she suggests that the Court should find that universities have an independent legal duty of care to its students under Title IX. (Carney's Mem. of Law at 20–22.) In the alternative, she avers that RIT had an independent legal duty to protect her from the foreseeable harm caused by its employee's unfair, biased, or improper sex-based harassment investigation and disciplinary proceedings. (*Id.* at 22–24.)

The Court is unpersuaded by either argument. Carney cites a string of cases in support of her proposition that this Court should follow other Districts and determine that Title IX establishes that a university owes an independent legal duty of care to its students. However, those cases merely support that a plaintiff who brings a cause of action under Title IX is not inherently precluded from also asserting a concurrent negligence claim under state law. None of the cases stand for the proposition that Title IX creates an independent duty of care for the purposes of a

state law negligence claim, and none of them occurred in the context of a simultaneous negligence and breach of contract action. *See Doe v. Ithaca Coll.*, No. 3:23-cv-1600 (GTS/ML), 2024 WL 4135714, at *12 (N.D.N.Y. Sept. 10, 2024) ("As an initial matter, the Court rejects [Defendant's] argument that Plaintiff's negligence-based claims are subsumed or precluded by his Title IX claim."); *see also Niles v. Nelson*, 72 F. Supp. 2d 13, 17-20 (N.D.N.Y. 1999) (rejecting defendant's argument that "because [plaintiff's] negligence claim arises out of the same set of facts giving rise the Title IX claim, it is inseparable from the Title IX claim and, thus, should be dismissed as duplicative"); *see also Papelino*, 633 F.3d 81 at (allowing concurrent Title IX and negligent supervision claims).

Additionally, the law does not reflect that RIT had an independent legal duty to protect Carney from the foreseeable harm caused by an employee's unfair, biased, or improper sex-based harassment investigation and disciplinary proceedings. Carney does not dispute that under New York law, there is "no cause of action . . . sounding in negligent prosecution or investigation." (Carney's Mem. of Law at 21–22 (quoting *Doe v. Syracuse Univ.*, No. 5:18-cv-1100 (BKS/TWD), 2022 WL 798058, at *11 (N.D.N.Y. Mar. 16, 2022))); *see Prasad*, 2016 WL 3212079, at *23. Nevertheless, Carney, relying on *Doe v. Ithaca College*, 2024 WL 4135714, asserts that because a "critical consideration in determining whether a duty exists is whether the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the best position to protect against the risk of harm," and "such a relationship of control exists where the third party is employed by the defendant,"

- 24 -

RIT had a duty – and was in the best position – to protect her from harm caused by its employees' errors during the Title IX investigation.  (Carney's Mem. of Law at 22–24.) But Carney overlooks a key aspect of the *Ithaca College* analysis, which is that the alleged sexual misconduct in that case was perpetrated by an employee of the college. 2024 WL 4135714, at *14. As such, the court did not determine that an institution owes its students a duty to protect them from foreseeable harm caused by an improper investigation; in actuality, it analyzed whether the employee's alleged sexual misconduct and the resulting harm were reasonably foreseeable to the college such that the institution had a duty to protect its students from that specific conduct. *Id.* at *14-15.  Notably, the court ultimately concluded that the college did not owe its students that duty.  *Id.* at 15.

Because Carney has not cited any New York law recognizing a duty of care owed by a private university stemming from its administrative proceedings, she has not pleaded a *prima facie* case of negligence.  *See Noakes v. Syracuse Univ.*, 369 F. Supp. 3d 397, 421 (N.D.N.Y. 2019).  Carney's fourth cause of action is dismissed.

## V.    Indemnification and Contribution

"When the party seeking indemnification was [them]self partially at fault, the courts of [New York] State, and throughout the Nation generally, [have] refused to imply a right to . . . indemnification against another who played an effective role in causing the damage." *Barbagallo v. Marcum LLP*, No. 11-CV-1358, 2012 WL 1664238, at *6 (E.D.N.Y. May 11, 2012) (internal quotation omitted) (quoting *Rock v. Reed-Prentice Div. of Package Mach. Co.*, 39 N.Y.2d 34, 39 (1976)); *see Amusement*

*Indus., Inc. v. Stern*, 693 F. Supp. 2d 319, 326 (S.D.N.Y. 2010) ("Under New York law, indemnification is not available where the party seeking indemnification was 'partially at fault' or 'responsible in any degree.'") (citations omitted).  As such, "New York law does not permit common law indemnification against intentional torts." *Thar Process, Inc. v. Sound Wellness, LLC*, No. 21-CV-422S, 2023 WL 24049, at \*7 (W.D.N.Y. Jan. 3, 2023) (first citing *Barbagallo*, 2012 WL 1664238, at \*7; and then citing *Campers' World Intern., Inc. v. Perry Ellis Intern., Inc.*, No. 02 CIV.453 (RPP), 2002 WL 1870243, at \*6 (S.D.N.Y. Aug. 13, 2022)).

Here, the underlying claim – defamation – is an intentional tort under New York law.  *See Bennice v. CosmoProf*, No. 1:23-CV-666, 2024 WL 532443, at \*3 (N.D.N.Y. Feb. 8, 2024) (quoting *Foster v. Churchill*, 87 N.Y.2d 744, 751 (1996)); *see also Milner v. N.Y. State High Educ. Servs. Corp.*, 24 A.D.3d 977, 978 (N.Y. App. Div. 2005).  Thus, indemnification is not available to Carney in this action.  *See Morgan Art Found. Ltd. v. McKenzie*, No. 18 Civ. 4438 (AT), 2019 WL 2725625, at \*19 (S.D.N.Y. July 1, 2019) (dismissing claim for indemnification because the underlying action involved intentional torts, including defamation).

The Court is unpersuaded by Carney's argument that her claim for indemnification is not predicated upon Koszkul's defamation claim, but rather on "RIT's failure to properly investigate and adjudicate her report of sexual harassment, which contributed to the circumstances underlying the defamation allegations against [her]." (Carney's Mem. of Law at 28.) Carney's contention fails to recognize that the basis for indemnification arises from the underlying cause of action asserted

against her by Koszkul, not her claims against RIT. *See e.g. Thar Process, Inc.*, 2023 WL 24049, at \*7 (dismissing claim for indemnification premised on action for intentional tort); *Barbagallo*, 2012 WL 1664238, at \*7; *Campers' World Intern., Inc.*, 2002 WL 1870243, at \*6. Consequently, Carney's claims of negligence and breach of contract against RIT are immaterial to the determination of whether an indemnity claim can be properly sustained against RIT, and are insufficient to establish a basis for indemnity. *See Morgan Art Found. Ltd.*, 2019 WL 2725625, at \*19 ("This argument about the larger picture, however, does not overcome the settled rule in New York that common law indemnification is not available for intentional torts.").

Similarly, Carney asserts that because she denies making the statements cited as defamatory in Koszkul's complaint, her claim for indemnity is not belied by the principle that indemnity is unavailable to a party who is responsible in any degree for the alleged wrongdoing. (Carney's Mem. of Law at 28–29.) The Court disagrees. Should it be determined that Carney did not make such statements, then Koszkul's claim for defamation against her will be unsuccessful, and Carney will have no reason to seek indemnification. Nonetheless, Carney's contention is insufficient to overcome the barrier prohibiting a claim for indemnity by a party alleged to have committed an intentional tort. Carney's claim for indemnification is dismissed.

The same is not true for Carney's claim for contribution. "An action for contribution may be maintained between concurrent, successive, independent, alternative, and even intentional tort-feasors, who have caused the 'same injury' to plaintiff." *Wolongevicz v. Town of Manlius*, No. 5:17-cv-933(BKS/DEP), 2018 WL

- 27 -

3769857, at *19 (N.D.N.Y. Aug. 8, 2018) (quoting *Castro v. County of Nassau*, 739 F. Supp. 2d 153, 184 (E.D.N.Y. 2010)).

RIT avers that it and Carney are not joint tortfeasors because "there is no defamation cause of action asserted against RIT" and "there is no question that the entirety of the conduct upon which the defamation claim is predicated is solely that of Carney." (RIT's Mem. of Law at 15.)  Under section 1401 of New York Civil Practice Law and Rules, "two or more persons who are subject to liability for damages for the same personal injury . . . may claim contribution among them whether or not action has been brought or a judgment has been rendered against the person from whom contribution is sought." *See Rook v. 60 Key Centre, Inc.*, 242 A.D.2d 872, 873 (N.Y. App. Div. 1997) ("The sole requirement [for contribution] is that the parties share responsibility for the same personal injury."). Accordingly, it is immaterial that Koszkul is pursuing a defamation claim against only Carney, and that his complaint points to Carney as the sole tortfeasor.  Because Carney alleged in her complaint that RIT at least contributed to spreading allegedly defamatory statements by publishing them to a third party without Koszkul or Carney's permission (Am. Third-Party Compl. ¶¶ 62-66, 189), and by including in its Notice of Investigation and Allegations statements not made by Carney in her Formal Complaint (*id.* ¶¶ 55–58), Carney has sufficiently alleged that RIT is a joint tortfeasor for the purpose of Koskul's defamation claim.[3]  *See Charter Oak Fire Ins. Co. v. Yeadon Fabric Domes, LLC*, 783

---

[3]  Because such allegations were included in Carney's amended complaint, the Court rejects RIT's contention that Carney claimed for the first time in her opposition memorandum of law that RIT altered the facts of her Title IX complaint. (RIT's Reply Mem. of Law at 6.)

F. Supp. 3d 696, 735 (N.D.N.Y. 2024) ("A third party will be liable for contribution only if shown to have had a part in causing or augmenting the injury for which contribution is sought." (quoting *Nassau Roofing & Sheet Metal Co., Inc. v. Facilities Dev. Corp.*, 71 N.Y.2d 599, 603 (1988))). The Court denies RIT's motion as to Carney's claim for contribution.

### <u>CONCLUSION</u>

For the foregoing reasons, the Court grants RIT's motion to dismiss Carney's claims for indemnification and negligence but denies its motion to dismiss Carney's breach of contract and contribution claims.

SO ORDERED.

Dated:   December 9, 2025
       Rochester, New York

                               MARK W. PEDERSEN
                               United States Magistrate Judge